**RUS–ANN DEVELOPMENT, INC., Appellant,**

v.

**ECGC, INC., Appellee.**

No. 12–06–00324–CV.

Court of Appeals of Texas, Tyler.

April 30, 2007.

Rehearing Overruled May 30, 2007.

George S. Henry, for appellant.

Allen B. Boswell, Deborah J. Race, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION

JAMES T. WORTHEN, Chief Justice.

Rus–Ann Development, Inc. appeals a temporary injunction granted by the trial court enjoining it from proceeding with a forcible entry and detainer action to recover a golf course it had leased to ECGC, Inc. In three issues, Rus–Ann contends the trial court abused its discretion in granting the temporary injunction because ECGC had not timely exercised the option to purchase that was part of the lease, ECGC had failed to comply with essential terms of the option contract, and specific performance was not available to ECGC as a remedy. We affirm.

## BACKGROUND

ECGC leased the Echo Creek Country Club (the "golf course") from Rus–Ann for one year beginning October 1, 2004. ECGC exercised an option to continue the lease through September 30, 2006. On December 6, 2005, Homer A. Lambert, President of Rus–Ann Development Company, sent ECGC a letter declaring that it was in default under the terms of the lease. On December 14, ECGC sent a letter in response stating that it was not in default but asking for more information on the alleged defaults. On December 21, 2005, ECGC filed suit seeking a temporary injunction to prevent Rus–Ann from evicting it under the lease. Correspondence flowed back and forth between Rus–Ann and ECGC over the next several months regarding the alleged defaults under the terms of the lease. On March 21, 2006, Rus–Ann sent ECGC a letter declaring that the lease was terminated. The next day, ECGC sent Rus–Ann a letter declaring that it was exercising its option to purchase the golf course. On April 7, ECGC amended its suit for temporary injunction, stating that it was "prepared and willing to perform in accordance with the [option] agreement." The trial court held two hearings on ECGC's temporary injunction. After the second hearing, the court said it would enter an order granting the temporary injunction if ECGC tendered $400,000 into the registry of the

court along with a $1,000,000 promissory note made payable to Rus–Ann Development to be paid over thirty years at six percent interest. These were the terms specified in the option to purchase. Following ECGC's compliance with these terms, the trial court entered an order for a temporary injunction enjoining Rus–Ann from any attempt to evict ECGC from the golf course pending a trial on the merits in the case.

Rus–Ann requested findings of fact and conclusions of law, which were timely filed by the trial court. Rus–Ann appealed the granting of the temporary injunction to this court.

### STANDARD OF REVIEW

■ A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex.2002). The only question before the trial court is whether the applicant is entitled to preservation of the status quo pending trial on the merits. *Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993). To obtain a temporary injunction, the applicant must plead and prove three specific elements: 1) the cause of action against the defendant; 2) a probable right to the relief sought; and 3) a probable, imminent, and irreparable injury in the interim. *Butnaru,* 84 S.W.3d at 204; *Walling,* 863 S.W.2d at 57.

■ The decision to grant or deny a temporary writ of injunction lies within the sound discretion of the trial court, and the court's grant or denial is subject to reversal only for a clear abuse of that discretion. *Butnaru,* 84 S.W.3d at 204. The trial court abuses its discretion when it misapplies the law to the "established facts or when the evidence does not reasonably support the conclusion that the applicant has a probable right of recovery." *Khaledi v. H.K. Global Trading, Ltd.,* 126 S.W.3d 273, 280 (Tex.App.-San Antonio 2003, no pet.) (citing *State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex. 1975)). The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision. *Butnaru,* 84 S.W.3d at 211.

■ When, as here, specific findings of fact and conclusions of law are filed and a reporter's record is before the appellate court, the findings will be sustained if there is evidence to support them, and the appellate court will review the legal conclusions drawn from the facts found to determine their correctness. *TMC Worldwide, L.P. v. Gray,* 178 S.W.3d 29, 36 (Tex.App.-Houston [1st Dist.] 2005, no pet.). After the trial court files its original findings of fact and conclusions of law, any party may file a request for specified additional or amended findings of fact or conclusions of law. TEX.R. CIV. P. 298; *Gentry v. Squires Constr., Inc.,* 188 S.W.3d 396, 408 (Tex.App.-Dallas 2006, no pet.)

### CAUSE OF ACTION

In its first issue, Rus–Ann contends the trial court abused its discretion in granting a temporary injunction enjoining it from proceeding with its forcible entry and detainer action because there was no evidence or insufficient evidence that ECGC had timely exercised its option to purchase the golf course. In the absence of a timely exercise of the option, there can be no cause of action for specific performance.

■ A forcible entry and detainer action is dependent on proof of a landlord-tenant relationship. *Dass, Inc. v. Smith,* 206 S.W.3d 197, 200 (Tex.App.-Dallas 2006, no pet.). Jurisdiction of forcible entry and detainer actions is expressly given to the justice court of the precinct where the property is located. *Aguilar v. Weber,* 72 S.W.3d 729, 731 (Tex.App.-Waco 2002, no pet.). Without a landlord-tenant relation-

ship, a justice court has no jurisdiction to enter a judgment and may be enjoined by a district court from doing so. *See id.* at 732. When a tenant under a lease containing an option to purchase exercises the option, a binding bilateral contract is formed. *Pitman v. Sanditen,* 626 S.W.2d 496, 498 (Tex.1981). The relation of landlord and tenant ceases and that of vendor and purchaser arises. *Id.* Therefore, if ECGC timely exercised its option to purchase, then the trial court properly enjoined Rus–Ann from continuing its forcible entry and detainer action in the justice court.

 Rus–Ann first contends that the contract terminated because ECGC failed to notify it in writing, as required by the lease, that it was extending the term of the lease past September 30, 2005. Evidence before the trial court showed that ECGC could continue the lease following September 30, 2005 by increasing its monthly rental payment from $7,500 to $8,500. It did so. Rus–Ann accepted these increased monthly payments. A lessor waives its right to declare a lease terminated after its primary term if it continues to accept monthly rental payments. *Nardis Sportswear v. Simmons,* 147 Tex. 608, 614, 218 S.W.2d 451, 454 (1949).

 Rus–Ann also contends that it terminated the lease by letter dated March 21, 2006, due to alleged breaches by ECGC. Specifically, it complains that ECGC failed to install a new entry gate, replace a shed, and install new carpet in the clubhouse as required by an addendum to the lease. On March 22, 2006, ECGC sent Rus–Ann a letter declaring its intent to exercise its option to purchase the property. The trial court made a finding that ECGC had exercised its option to purchase.

 The rights and duties of the lessor and lessee are determined by the lease and are contractual. *Exxon Corp. v. Pluff,* 94 S.W.3d 22, 29 (Tex. App.–Tyler 2002, pet. denied) (op. on reh'g). Whether a lease contract has been breached is a question of law. *See id.; see also Jack v. State,* 694 S.W.2d 391, 398 (Tex.App.-San Antonio 1985, writ ref'd n.r.e.). Therefore, the issue of whether ECGC had breached the contract in a manner that allowed Rus–Ann to terminate the lease before ECGC exercised its option to purchase was a question of law for the court to decide. The addendum including the allegedly breached terms is entitled "Promissory Note" and was signed more than two months after the lease was signed. Lambert signed for Rus–Ann, but no one signed for ECGC. The lease does not impose a deadline for accomplishing the three tasks. The court heard evidence from officers of both Rus–Ann and ECGC, who gave conflicting testimony about whether the lease had been breached. The trial court does not abuse its discretion if there is some evidence reasonably supporting its decision. *Butnaru,* 84 S.W.3d at 211; *see also Advance Components, Inc. v. Goodstein,* 608 S.W.2d 737, 739 (Tex.Civ.App.-Dallas 1980 writ ref'd n.r.e.) (a departure from the contract terms, not amounting to a material breach of the contract, will not prevent the plaintiff from having the remedy of specific performance). Rus–Ann's first issue is overruled.

### PROBABLE INJURY

 In its second issue, Rus–Ann contends that the trial court abused its discretion in granting the temporary injunction because there was no evidence or insufficient evidence that ECGC had complied with the material terms of the contract and therefore was entitled to specific performance. Rus–Ann contends that ECGC was required to close the sale within ninety days of the date in which it exercised its

option to purchase the golf course. ECGC contends that it is entitled to a temporary injunction and is allowed to show at the final hearing that it is entitled to specific performance even though it did not tender payment within ninety days as required by the option to purchase. We agree.

In Texas, the potential loss of rights in real property is a probable, imminent, and irreparable injury that qualifies a party for a temporary injunction. *See Franklin Savs. Ass'n v. Reese*, 756 S.W.2d 14, 15–16 (Tex.App.-Austin 1988, no writ) (op. on reh'g). It is well understood that specific performance is more readily available as a remedy for the sale of real estate than for the sale of personal property. *Scott v. Sebree*, 986 S.W.2d 364, 369 (Tex. App.-Austin 1999, pet. denied). This is because damages are generally believed to be inadequate in connection with real property. *Id.* at 370. It is thoroughly settled that where a defendant has openly and avowedly refused to perform his part of the contract or declared his intention not to perform it, the plaintiff need not make tender of payment of the consideration before bringing suit. *Burford v. Pounders*, 145 Tex. 460, 466, 199 S.W.2d 141, 144 (1947).

Beginning with its December 6, 2005 letter and subsequent correspondence, Rus–Ann left no doubt that it was refusing any attempt by ECGC to proceed with the purchase of the golf course. Where tender of performance is excused, the party must plead and prove that he is ready, willing, and able to perform. *17090 Parkway, Ltd. v. McDavid*, 80 S.W.3d 252, 256 (Tex.App.-Dallas 2002, pet. denied). ECGC pleaded that it was "prepared and willing to perform in accordance with the Agreement between Plaintiff and Defendant." During the two hearings on the temporary injunction, ECGC presented testimony that it was ready to tender the $400,000 in cash and the $1,000,000 prom-

issory note into the registry of the court to close the purchase of the golf course. Rus–Ann complains that ECGC changed its manner of financing for the $400,000 between the first and second hearings on the temporary injunction. This is irrelevant. When the trial court required tender into the registry of the court, ECGC did so. The record shows that ECGC was not required to tender payment of the consideration before bringing suit due to Rus–Ann's refusal to perform and that there is sufficient evidence that ECGC was ready, willing, and able to perform its duties under the terms of the option contract. Rus–Ann's second issue is overruled.

### PROBABLE RIGHT OF RECOVERY

In its third issue, Rus–Ann contends that the trial court abused its discretion in granting a temporary injunction because the option contract was not sufficiently clear and definite for enforcement by specific performance. It argues that essential terms are missing, eliminating ECGC's right to specific performance.

Before a court will decree the specific performance of a contract for the sale of land, or entertain a suit for damages for the breach thereof, the written agreement or memorandum required by statute must contain the essential terms of a contract, expressed with such certainty and clarity that it may be understood without recourse to parol evidence. *Wilson v. Fisher*, 144 Tex. 53, 56, 188 S.W.2d 150, 152 (1945); *see also Johnson v. Snell*, 504 S.W.2d 397, 398 (Tex.1973). ("Specific performance will be decreed only if the essential terms of the contract are expressed with reasonable certainty.") The essential elements required, in writing, for the sale of real property are the price, the property description, and the seller's signature. *See Lynx Exploration and Prod. Co. v. 4–Sight Operating Co.*, 891 S.W.2d

**928**

785, 788 (Tex.App.-Texarkana 1995, writ denied). Those three essential elements are in the lease with option to purchase in the instant case.

Rus–Ann contends that the only terms of the seller financing included in the option to purchase contract were the term of thirty years and the interest rate of six percent. It says that the other terms of the seller financing such as how, when, where, how much, and to whom payments were to be made were not included. However, these terms were part of the provisions of the lease agreement. The court can look at both the option to purchase and the lease in determining the terms of a contract to be enforced by specific performance. *See Frost Nat'l Bank v. L & F Distributors, Ltd.,* 165 S.W.3d 310, 312–13 (Tex.2005).

 Rus–Ann also contends that because the deed of trust clause stating whether the note is assumable or due on sale is not included in the contract, it is unenforceable by specific performance. We disagree. The failure of a real estate sales contract to provide the fundamental provisions of a deed of trust does not render it unenforceable by specific performance. *Smith v. Hues,* 540 S.W.2d 485, 492 (Tex.Civ.App.Houston [14th Dist.] 1976, writ ref'd n.r.e.). Rus–Ann further complains that the option contract does not include terms relating to proration of taxes or the place of closing. Again, failure to include these terms in the contract for the sale of real property does not render it unenforceable by specific performance. *See id.* Finally, Rus–Ann contends that the option to purchase does not include whether ECGC had a right to the partial release of lots that it sold on the golf course during the thirty years. That matter was covered in the lease. Therefore, it is a term that can be determined by the trial court at the final hearing. *See Frost Nat'l Bank,* 165 S.W.3d at 312–13. We hold that the contract contained the essential terms for a decree of specific performance and establishing a probable right to the relief sought. Rus–Ann's third issue is overruled.

## DISPOSITION

Having overruled Rus–Ann's three issues, we *affirm* the trial court's order granting a temporary injunction commanding Rus–Ann to refrain from prosecuting an action to evict ECGC from the property known as Echo Creek Country Club.