12-08-00371-CV









NO. 12-08-00371-CV

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

DONALD EMMETT WARD,                        §                    APPEAL
FROM THE 1ST

SHERREL SCARBOROUGH

AND DENNIS SCARBOROUGH,

APPELLANTS

                                                                         §                     JUDICIAL
DISTRICT COURT 

V.

 

THOMAS LADNER,

APPELLEE                                                   
§                     SABINE COUNTY, TEXAS







OPINION
ON REHEARING

            Thomas
Ladner filed a motion for rehearing, to which Donald Emmett Ward, Sherrel
Scarborough, and Dennis Scarborough responded.  Ladner’s motion for rehearing
is granted.  We withdraw our opinion and judgment of January 6, 2010 and
substitute the following opinion and corresponding judgment in its place.

            Donald
Emmett Ward, Sherrel Scarborough, and Dennis Scarborough (collectively
“Appellants”) appeal the trial court’s judgment entered in favor of Thomas
Ladner.  Appellants raise four issues on appeal.  We affirm.

 

Background

            Dillis
Ward and his wife, Gertie, owned property on the shore of Toledo Bend Reservoir
in Sabine County, Texas (the “property”).  The property, on which stood a small
store with living quarters, was surrounded by land owned by the Sabine River
Authority of Texas.  In 1987, Dillis Ward died.  Thereafter, Dillis Ward’s son,
Donald Ward (“Ward”), had a conversation with Ladner concerning the property. 
According to Ward, the two entered into an oral agreement whereby Ladner would rent
the property.  However, according to Ladner, the two orally agreed that he
would purchase the property.

            Ladner
lived on the property during the late 1980s and, since that time, has received
rental income from the campsites located predominantly on the adjacent property
owned by the Sabine River Authority.  Ward visited the property occasionally
over the years and contacted Ladner prior to these visits.  Ward’s daughter, Sherrel
Scarborough, likewise visited the property occasionally during the relevant
period and also contacted Ladner prior to her arrival.

            In
1996, Gertie died.  In 2007, by deed of gift, Ward transferred the property to
Sherrel Scarborough and her husband, Dennis Scarborough.  In January 2007, the
Scarboroughs moved to the property.  In August 2007, the Scarboroughs gave
notice to Ladner that they would not continue to rent the property to him.

            Ladner
filed the instant suit seeking a declaratory judgment that he and Ward entered
into a binding contract for the purchase of the property.  Ladner further
sought specific performance of an oral real estate contract.  Ladner also made allegations
of, among other things, trespass to try title and promissory estoppel.  Thereafter,
Ladner sought a temporary restraining order.  In his sworn petition and
affidavit filed in support of his petition for temporary restraining order,
Ladner averred that Ward agreed to sell the property for $160,000 “paid at $500
per month with no interest (320 months or 26.6 years to pay off).”  Ladner
further alleged that he “agreed to this arrangement and began paying the
monthly payments to Donald Ward by check mailed to Donald Ward’s address in
Temple, Texas.”

            Following
the presentation of evidence, the matter was submitted to the jury.  Ultimately,
the jury found that the parties had entered into an oral agreement for the sale
of the property.  The jury further found that Ladner (1) made monthly payments
on the $160,000 beginning in 1987 and continuing until October 2007, (2) took
possession of the property in 1987 and retained such possession to the present
time, and (3) made permanent and valuable improvements upon the property
beginning in 1987.  The trial court entered judgment in Ladner’s favor and ordered
specific performance of the oral contract.  By its judgment, the trial court
further ordered the transfer of title to the property to Ladner and that Ladner
pay the remainder of the unpaid balance of $160,000 at a rate of $625 per
month.[1]  This appeal followed.

 

 

Variance

            In
their first issue, Appellants argue that the trial court abused its discretion
by submitting Question 1 because the evidence at trial regarding the terms of
the oral contract for sale of real estate differed materially and substantially
from the terms of the contract alleged in Ladner’s live pleadings.

            Generally,
we review an issue of whether a question was improperly submitted to the jury
for abuse of discretion.  See Recognition Commc’ns, Inc. v. Am. Auto.
Ass’n, Inc., 154 S.W.3d 878, 885 (Tex. App.–Dallas 2005, pet. denied); see
also Tex. Dep't of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990)).
 A trial court abuses its discretion where it submits a jury question that is
neither supported by the pleadings nor tried by consent.  See Recognition
Commc’ns, Inc., 154 S.W.3d at 885.  A trial court abuses its discretion
if its action is arbitrary, unreasonable, and without reference to any guiding
rules or principles or where it clearly fails to analyze or apply the law
correctly.  Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238,
241 (Tex. 1985).

            The
Texas Rules of Civil Procedure are designed to prevent a variance between
pleading and proof from having the effect of precluding any recovery.  See,
e.g., Tex. R. Civ. P. 66, 67,
90.  Nonetheless, a plaintiff in an action on a contract must recover, if at
all, on the cause of action as it has been alleged.  See Hollingsworth v.
Nw. Nat’l Ins. Co., 522 S.W.2d 242, 246 (Tex. Civ. App.–Texarkana 1975,
no writ).  If the proof shows a contract essentially different from the
contract alleged, the action will fail.  See Sanchez v. Hernandez,
456 S.W.2d 497, 498 (Tex. Civ. App.–San Antonio 1970, writ ref’d n.r.e.).

            Yet,
not every variance between the contract pleaded and the proof offered is a
fatal one.  Id.  For instance, a variance arising from an attempt
to plead the evidence relied on to establish the existence of an oral contract
is not fatal unless it tends to mislead or surprise the opposing party.  See
Bland v. Cruce, 238 S.W. 720, 722 (Tex. Civ. App.–Dallas 1922, no
writ).

            The
Texas Rules of Appellate Procedure control the required contents and
organization for an appellant's brief.  See Tex. R. App. P. 38.1.  One of those requirements is that an
appellant's brief must contain a clear and concise argument, including
appropriate citations to authority and the record.  See Tex. R. App. P. 38.1(i).  This
requirement is not satisfied by merely uttering brief conclusory statements
unsupported by legal citations.  Valadez v. Avitia, 238 S.W.3d
843, 845 (Tex. App.–El Paso 2007, no pet.).  Failure to provide substantive
analysis of the legal issue presented results in waiver of the complaint.  Id.


            In
the case at hand, Appellants expressly recognize in their brief that, to be
fatal, a variance must be substantial, misleading, constitute surprise, and be
a prejudicial departure from the pleadings.  But Appellants make only a single
conclusory reference to this key issue apart from their recognition of its
existence.  Specifically, Appellants state, “To plead the terms of one contract
in a sworn pleading, amend the terms claimed in trial testimony, then not be
certain of the terms, then request a Jury issue that is silent as to the terms
of the contract is substantially misleading and constituted surprise ….” 
Appellants do not set forth any further facts underlying their being surprised
or misled by this variance.  As such, we hold that Appellants have waived the
issue.  See Tex. R. App. P.
38.1(i).  Appellants’ first issue is overruled.

 

Specific Performance

Appellants’
second and third issues concern the trial court’s order of specific
performance.  In their second issue, Appellants argue that the trial court
erred in ordering specific performance when there was a jury finding that an
oral contract existed, but not jury findings determining the material terms of
the contract.  In their third issue, Appellants argue that the trial court
erred in overruling their objection to Question 1 of the court’s charge due to
its failure to make inquiry of the jury concerning essential contract terms or
whether Ladner complied with those terms.  Question 1 inquired of the jury as
follows:  “Did Thomas Ladner and Donald Ward enter into an oral agreement in
1987 in which Donald Ward agreed to sell the subject property to Thomas
Ladner?”  The jury answered Question 1 in the affirmative.

It
is the trial court’s responsibility to submit a proper charge.  See Spencer
v. Eagle Star Ins. Co., 876 S.W.2d 154, 158 (Tex. 1994).  One who seeks
specific performance of a real estate contract must prove that he has
diligently and timely performed or tendered performance of all obligations set
forth in the contract.  Texacally Joint Venture v. King, 719
S.W.2d 652, 653 (Tex. App–Austin 1986, writ ref’d n.r.e.).  Price is an
essential term required for the sale of real property.  See Rus-Ann
Dev., Inc. v. ECGC, Inc., 222 S.W.3d 921, 927 (Tex. App.–Tyler 2007, no
pet.).[2] 
Thus, to be entitled to specific performance, Ladner had to prove that he paid
the purchase price agreed to by the parties.[3]  See
King, 719 S.W.2d at 653.  

Whether
an oral contract existed is a question of fact for the jury.  See American
Transfer & Storage Co. v. Reichley, 643 S.W.2d 162, 164 (Tex. Civ.
App.–Amarillo 1976, writ ref’d).  Because price is an essential element of a
real estate contract, Ladner was required to secure a finding on the contract
price to be entitled to specific performance. 

At
the charge conference, Appellants objected to the submission of Question 1
because it did not contain all of the essential terms alleged by Appellees in
their pleadings, one of which was a contract price.  Appellants further sought
to submit a charge question that contained the contract price pleaded by
Ladner.  

The
testimony in the case at hand establishes that both Ward’s and Ladner’s
memories concerning some of the details of the transaction had faded during
this interim period.  Yet, the testimonies of the two principals did not waiver
on certain core facts, which are summarized as follows:  Ladner testified that
Ward agreed to sell him the property for $160,000; Ward testified that no
communications concerning an agreement to sell the property ever transpired
between him and Ladner.  

Ward’s
testimony that there existed no agreement to sell the property amounts to a
denunciation of the existence of the totality of the agreement, including a
$160,000 contract price.  However, there is no testimony of record concerning a
contract price other than Ladner’s testimony that the agreed price was $160,000.00. 
Thus, even though Ward’s denial of the existence of the contract necessarily included
a denial of any agreement concerning the price, the trial court’s submission of
the question concerning whether the parties reached an agreement, if answered in
the affirmative, necessarily disregards the totality of Ward’s testimony.  As
such, if the jury determined that the parties agreed that Ward would sell the
subject property to Ladner, the evidence was conclusive regarding the sales
price.  Because the evidence was conclusive on this material term, no jury
finding was required.  See Bay Rock Operating Co. v. St. Paul Surplus
Lines Ins. Co., 298 S.W.3d 216, 235 (Tex. App.–San Antonio 2009, pet.
filed).  Therefore, we hold that the trial court did not err in refusing to
submit a question to the jury that made no inquiry concerning the sales price. 
We further hold that the trial court did not err in ordering specific
performance absent a jury finding concerning sales price because the evidence
concerning sales price was conclusively established.  See Rus-Ann Dev.,
222 S.W.3d at 927 (stating that specific performance will be decreed where
essential terms of contract are expressed with reasonable certainty). 
Appellants’ second and third issues are overruled.  

 

Evidentiary Sufficiency

            In
their fourth issue, Appellants argue that the evidence was both legally and
factually insufficient to sustain specific performance under the equitable exception
to the statute of frauds.  

Legal
Sufficiency

A
party who challenges the legal sufficiency of the evidence to support an issue
upon which he did not have the burden of proof at trial must demonstrate on
appeal that there is no evidence to support the adverse finding.  Bright
v. Addison, 171 S.W.3d 588, 595 (Tex. App.–Dallas 2005, pet. denied).  When
reviewing a “no evidence” issue, we determine “whether the evidence at trial
would enable reasonable and fair minded people to reach the verdict under
review.”  City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). 
In making this determination, we must credit favorable evidence if a reasonable
finder of fact could, and disregard contrary evidence unless a reasonable
finder of fact could not. Id.  The finder of fact is the sole
judge of the credibility of the witnesses and the weight to be assigned to
their testimony.  See Canal Ins. Co. v. Hopkins, 238 S.W.3d 549,
557 (Tex. App.–Tyler 2007, pet. denied) (citing City of Keller,
168 S.W.3d at 819).  The finder of fact is free to believe one witness and
disbelieve another, and reviewing courts may not impose their own opinions to
the contrary.  Id.  Accordingly, we must assume that the finder
of fact decided all credibility questions in favor of the findings if a
reasonable person could do so.  Id.  If a reasonable finder of fact
could have done so, we must assume that the finder of fact chose what testimony
to disregard in a way that favored the findings.  See Canal,
238 S.W.3d at 557 (citing City of Keller, 168 S.W.3d at 820).  A
finder of fact “may disregard even uncontradicted and unimpeached testimony
from disinterested witnesses” where reasonable.  Canal, 238
S.W.3d at 557 (quoting City of Keller, 168 S.W.3d at 819–20).

Moreover,
it is within the finder of fact’s province to resolve conflicts in the
evidence.  Canal, 238 S.W.3d at 557 (citing City of Keller,
168 S.W.3d at 820).  Consequently, we must assume that, where reasonable, the
finder of fact resolved all conflicts in the evidence in a manner consistent
with the findings.  Id.  Where a reasonable finder of fact could
resolve conflicting evidence either way, we must presume the finder of fact did
so in favor of the findings.  Canal, 238 S.W.3d at 557 (citing City
of Keller, 168 S.W.3d at 821).  Where conflicting inferences can be
drawn from the evidence, it is within the province of the finder of fact to
choose which inference to draw, so long as more than one inference can
reasonably be drawn.  Id. Therefore, we must assume the finder of
fact made all inferences in favor of the findings if a reasonable person could
do so.  Id.  

Additionally,
any ultimate fact may be proved by circumstantial evidence.  See Wal-Mart
Stores, Inc. v. Bertrand, 37 S.W.3d 1, 12 (Tex. App.–Tyler 2000, pet.
denied).  However, the legal equivalent of no evidence exists when
circumstantial evidence gives life to inferences equally consistent with two
different propositions.  Id.  Furthermore, when circumstances are
equally consistent with either of two facts and nothing shows that one is more
probable than the other, neither fact can be inferred and the no evidence
challenge must be sustained.  Id.  

Equitable
Exception to the Statute of Frauds

            The
statute of frauds is an affirmative defense requiring that certain specified
classes of contracts be in writing to be enforceable.  See Tex. R. Civ. P. 94; Gerstacker v.
Blum Consulting Engr’s, Inc., 884 S.W.2d 845, 850 (Tex. App.–Dallas
1994, writ denied).  Whether a contract falls within the statute of frauds is a
question of law.  Gerstacker, 884 S.W.2d at 850.  The instant
case concerns allegations of a contract for the sale of real estate.  Therefore,
the parties’ contract, if any, is governed by the statute of frauds.  See Tex. Bus. & Com. Code Ann. §
26.01(a), (b)(4) (Vernon 2009) (contract for sale of real estate not
enforceable unless in writing and signed by person charged with agreement).

            However,
there exists an equitable exception to the statute of frauds.  See Hooks v.
Bridgewater, 111 Tex. 122, 229 S.W. 1114, 1116 (Tex. 1921).  In Hooks,
the Texas Supreme Court held that to relieve a parol sale of land from the
operation of the statute of frauds, three things are necessary:  (1) payment of
the consideration, whether it be in money or services; (2) possession by the
vendee; and (3) the making by the vendee of valuable and permanent improvements
upon the land with the consent of the vendor.[4]  Id. 
The court described these three elements as “indispensable.”  Id.

            In
the case at hand, the burden was upon Ladner to secure jury findings to support
this equitable exception.  See Choi v. McKenzie, 975 S.W.2d 740,
743 (Tex. App.–Corpus Christi 1998, pet. denied).  He sought to do so by the
submission of Questions 2, 3, and 4. 

Payment
of Consideration

Question
2 queries, “Did Thomas Ladner make monthly payments on the $160,000.00
beginning in 1987 and continuing until October 2007?”  As set forth previously,
since the jury determined that the parties agreed that Ward would sell the
subject property to Ladner, the evidence was conclusive regarding the $160,000 sales
price.  Based on our review of the record, we note that there is evidence that
either Ladner or someone acting on his behalf made multiple payments to Ward
during the time period in question.  Ladner testified that he paid $410 per
month from 1987 through 2001 and, thereafter, paid $625 per month.  Ladner
further testified that he was “up to date” on his payments.[5] 
Moreover, Ladner confirmed that such payments were made over one hundred
fifty-six months. We hold that there is legally sufficient evidence to support
the jury’s answer to Question 2.  

Appellants
argue that payments of money by Ladner to Ward is equally consistent with the
competing arguments proposed by the parties.  In other words, according to
Appellants, there is no evidence tending to support that it is more probable
that these payments were made as payment toward the purchase of the property
than it is that the payments were made as rent.  Thus, neither purpose for the
payment of these monies can be inferred and Ward’s no evidence challenge must
be sustained with regard to Question 2.  See Bertrand, 37
S.W.3d at 12.  However, the jury found in its answer to Question 1 that Thomas
Ladner and Donald Ward entered into an oral agreement in which Donald Ward
agreed “to sell the subject property” to Thomas Ladner (emphasis added). 
Determining facts is the exclusive province of the finder of fact in the trial
court.  See Barnes v. Western Alliance Ins. Co., 844 S.W.2d 264,
270 (Tex. App.–Amarillo 1993, writ dism’d by agr.).  An unchallenged jury
finding is binding on an appellate court.  See Reliance Ins. Co. v.
Denton Cent. Appraisal Dist., 999 S.W.2d 626, 629 (Tex. App.–Fort Worth
1999, no pet.).   

Here,
we have overruled Appellants’ challenges to Question 1.  As such, we are bound
by the jury’s finding that Ward agreed to sell the subject property to Ladner. 
Consequently, because the jury found that there was an agreement to sell the
property, we will not analyze Ladner’s payments to Ward in a manner
inconsistent with the jury’s finding in Question 1.  

            Possession

Question
3 asks, “Did Thomas Ladner take possession of the property in question in 1987
and retain such possession to the present time?”  From our review of the
record, we note that there is evidence that Ladner was in possession of the
property during the relevant time period.  However, similar to the evidence
underlying payment of consideration, Appellants again argue that Ladner’s
possession of the property is no more indicative of his status as a vendee than
it is of his status as a person who is renting property.  As with our analysis
of the issue of payment of consideration, we decline to analyze Ladner’s
possession of the subject property in a manner inconsistent with the jury’s
finding in Question 1.  Therefore, we hold that there is legally sufficient
evidence to support the jury’s answer to Question 3.

Making
of Improvements with Consent

            Question
4 asks, “Did Thomas Ladner make permanent and valuable improvements upon the
property in question beginning in 1987?”  Based on our review of the record, we
conclude that there is legally sufficient evidence to support that Ladner made
permanent and valuable improvements on the property.  Specifically, the
evidence supports that Ladner made improvements such as replacing the roof on
the building located on the property and converting the interior of the
structure, which was previously a store, to a residence.  We note that no
inquiry was made of the jury concerning Ward’s consent to these improvements.  However,
Ladner’s testimony supports that such improvements were made with Ward’s
consent.[6]

            We
hold that the evidence is legally sufficient to sustain specific performance
under the equitable exception to the statute of frauds.

Factual
Sufficiency

            We
test the factual sufficiency of the evidence by examining the entire record to
determine whether a finding is clearly wrong and unjust.  See Kinder
Morgan N. Tex. Pipeline, L.P. v. Justiss, 202 S.W.3d 427, 437 (Tex.
App.–Texarkana 2006, no pet.).  When considering a factual sufficiency
challenge to a jury’s verdict, we must consider and weigh all the evidence, not
just that evidence which supports the verdict.  See Mar. Overseas
Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998).  We can set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence that
the verdict is clearly wrong and unjust.  Id.; Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986).  We are not a fact finder.  See Justiss,
202 S.W.3d at 437.  Accordingly, we may not pass on the witnesses’ credibility
or substitute our judgment for that of the jury, even if the evidence would
clearly support a different result.  See Golden Eagle Archery, Inc. v.
Jackson, 116 S.W.3d 757, 761 (Tex. 2003); Ellis, 971
S.W.2d at 407.  If we find the evidence is factually insufficient, we must
clearly state why the jury's finding is insufficient or is so against the great
weight and preponderance of the evidence as to be manifestly unjust.  Pool
v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).

            In
the instant case, Appellants have not argued, outside of their statement of
their fourth issue, that any particular finding is factually insufficient. 
Rather, they generally contend that the evidence is factually insufficient to
sustain specific performance under the equitable exception to the statute of
frauds.  We have examined the entirety of the record; we have considered and
weighed all of the evidence.  Having done so, we have not determined that any
evidence tending to contradict the evidence supporting the jury’s findings is
of such character so as to cause us to conclude that the jury’s findings are
clearly wrong and unjust.  Therefore, we hold that the evidence is factually
sufficient to sustain specific performance under the equitable exception to the
statute of frauds.

Summation

            As
set forth above, we have concluded that there is legally and factually
sufficient to sustain specific performance under the equitable exception to the
statute of frauds.  Accordingly, we hold that the exception set forth in Hooks
v. Bridgewater is applicable and, as a result, the parties’ contract was
relieved from the operation of the statute of frauds.  Appellants’ fourth issue
is overruled.

 

Disposition

            Having
overruled Appellants’ first, second, third, and fourth issues, we affirm
the trial court’s judgment.  

 

 

                                                                                                Sam Griffith  

                                                                                                        
Justice

 

 

 

 

Opinion delivered June 30, 2010.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)









[1]
Appellants were awarded a lien against the property to secure Ladner’s
indebtedness until the indebtedness was fully paid. 





 [2]
In their brief, Appellants note that in Rus-Ann Devlopment, we
“held that terms of the seller financing ‘such as how, when, where, how much[,]
and to whom payments were made’ were necessary elements in the application of
specific performance.”  See Rus-Ann Dev., 222 S.W.3d at
927.  However, according to our opinion in Rus-Ann Development,
the language quoted by Appellants concerns the contentions made by the
appellant in that case.  See id. at 928.  We did not
specifically hold that these terms of seller financing were essential.  See
id.  Rather, we noted that these terms were provisions of the lease
agreement, which the trial court could consider in determining the terms of a
contract to be enforced by specific performance.  See id.  In the
instant case, Appellants do not expound upon the aforementioned quote from Rus-Ann
Development concerning seller financing terms, but rather focus their
argument on the amount of consideration generally.  We will likewise
concentrate our discussion of Appellants’ second and third issues accordingly. 
See Tex. R. App. P.
38.1(i).  

 





                        [3]
The issue of evidence underlying Ladner’s payment of consideration, as
well as that of his possession of and making improvements to the property, is
discussed in our analysis of Appellants’ fourth issue.





[4]
The court noted that absent such improvements, it would consider the presence
of such facts as would make the transaction a fraud upon the purchaser if it
were not enforced.  Id.

 





[5]
Ladner’s trial testimony was given in May 2008.  The parties stipulated at
trial that the total amount of the payments made by Thomas Ladner to the
defendants as of May 2008 was $120,185.00. 





[6] Question 4 is an incomplete submission to which no
objection was made.  See Tex. R.
Civ. P. 279.  Because the record contains some evidence that Ward
consented to Ladner’s making improvements to the property, which is consistent
with the trial court’s judgment, we deem the missing element of consent found. 
Id.; see Chon Tri v. J.T.T., 162 S.W.3d 552, 557
(Tex. 2005); State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430,
437 (Tex. 1995).