

# IN THE
# TENTH COURT OF APPEALS

### No. 10-22-00250-CV

**MICHAEL WILLIAMS AND OLLIE WILLIAMS,**

          **Appellant**

 **v.**

**WILDWOOD DEVELOPMENT COMPANY, INC.,
INDEPENDENT AMERICAN CONSTRUCTION, INC.,
GDI AND ASSOCIATES, INC.D/B/A
DIETZ ENGINEERING, AND OAK LEAF ESTATES, LLC,**

          **Appellees**

---

**From the 40th District Court
Ellis County, Texas
Trial Court No. 107519**

---

## MEMORANDUM OPINION

---

In one issue, appellants, Michael Williams and Ollie Williams, contend that the

trial court abused its discretion by granting a mandatory temporary injunction in favor

of appellee, Oak Leaf Estates, LLC ("OLE").  We affirm.

## Background

This dispute involves stormwater drainage from a newer development to an older, downhill development in Oak Leaf, Texas. The older development, Oak Leaf Farms Phase Two, includes lots on both sides of Willow Bend Drive, which runs east and west.[1] Each lot in Oak Leaf Farms Phase Two is encumbered by drainage easements on the outer boundaries of the lot. These easements run north to south along the entire length of the lot and are intended to take stormwater runoff away from the development to Red Oak Creek. The Williamses own Lots 5 and 6 in the Oak Leaf Farms Phase Two development. Lots 5 and 6 are adjacent to one another. Lot 5 is undeveloped, and Lot 6 contains a residence.

The newer development, Oak Leaf Estates subdivision, is located on an approximately 49-acre tract adjacent to Oak Leaf Farms Phase Two. The Oak Leaf Estates development plan included a detention pond at the southern end of the project, adjacent to the Williams' lots. The detention pond is intended to hold water when it is raining but does not hold water when it is not raining. Essentially, the detention pond functions to slow the flow of water into adjoining properties.

After the detention pond was excavated, OLE constructed a stone retaining wall at the southern end of the pond with three discharge openings. The three discharge

---

[1] The testimony in this case establishes that the Oak Leaf Farms Phase Two development is situated in a 100-year flood plain.

openings were designed as constructed weirs and sized to deliver reduced amounts of water into the drainage easements on the Williamses' properties. The testimony in this case established that the reviewing engineer for the City of Oak Leaf reviewed the drainage plan for Oak Leaf Estates eight times and approved it.

Despite OLE's drainage plan, the Williamses asserted that stormwater flooded their property and the properties of their neighbors. Michael apparently attempted to persuade engineers with OLE, as well as city officials, to rectify the alleged flooding problem. When neither OLE nor city officials responded, Michael engaged in self-help by blocking the central discharge point with dirt and rock and filling in the swale that had been created in the drainage easement between Lots 5 and 6. Michael also blocked the eastern discharge point with dirt and rock to prevent stormwater from entering the drainage easement between Lots 6 and 7. Michael did not obtain the consent of OLE to block the two discharge points or fill in the swale in the drainage easement. Additionally, Michael did not submit drawings or drainage plans to the City of Oak Leaf, nor did he seek the City's approval to alter OLE's designed and approved drainage plan for the property. Nevertheless, Michael alleges that his efforts prevented further flooding and damage to Lots 5 and 6, as well as his neighbor's properties to the east.

Later, the Williamses filed suit against Wildwood Development Company, Inc., Independent American Construction, Inc., GDI and Associates, Inc. d/b/a Dietz

Engineering, and the City of Oak Leaf.[2]  In their original petition, the Williamses asserted trespass and negligence causes of action against the defendants, as well as an assertion that the defendants created an ongoing nuisance that substantially impairs their ability to use and protect their property.  The Williamses complained not only about "an on-going new and harmful water drainage pattern on to" their property, but also "construction trash and debris from the on-going residential constructions" that continues to "accumulate on the lower portion of the fifty-acre development and at the Pond wall and collects on the perimeter fence of the Williams property and neighbor's yards."

OLE filed a verified plea in intervention and application for injunctive relief.  In this filing, OLE asserted a trespass cause of action against the Williamses based on Michael's self-help actions, sought a declaration that the drainage easement on the Williamses' lots are for the benefit of OLE "to provide for the drainage of rainfall run-off from Oak Leaf Estates across Oakleaf [sic] Farms Phase Two and into Red Oak Creek," and applied for a temporary and permanent injunction compelling the Williamses to remove the "dirt and rubble" in the easements and prohibiting the Williamses from taking any action to "delay, hinder, or obstruct the drainage of water from the detention

---

[2] Wildwood Development Company, Inc., Independent American Construction, Inc., GDI Associates, Inc. d/b/a Dietz Engineering, and the City of Oak Leaf are not parties to this appeal.

ponds on Lot 11 of Oak Leaf Estates into the drainage easements on the Williams' [sic] lots."

The Williamses responded by filing a first amended petition asserting trespass and negligence claims against OLE, as well as alleging that OLE has created an ongoing nuisance that substantially impairs their ability to use and protect their property.

Thereafter, the trial court conducted a hearing on OLE's verified application for injunctive relief. After hearing testimony from several witnesses, the trial court determined that OLE was entitled to a temporary injunction. Specifically, the trial court concluded that,

> the Court finds that the Williams have engaged in an ongoing active trespass by placing dirt and rock along and over the common boundary between the southern boundary of Lot 11 and the northern boundary Lots 4, 5, 6, and 7 of Oak Leaf Farms Phase Two, and have obstructed two of the three discharge points from the detention pond on Lot 11 as shown on Sheet No. C2.1 (Proposed Drainage Area Map) included in Exhibit 25 introduced in evidence, and specifically in the area labeled "Discharge Point D Detention Pond" on said drawing. The Court further finds that the Williams have engaged in nonconforming activities in violation of OLE's easement rights in the drainage easements between Lots 4 and 5, between Lots 5 and 6, and between Lots 6 and 7 of Oak Leaf Farms Phase Two by placing dirt and rock that prevents storm water from discharging through the weirs or cut-outs in the retaining wall on the southern side of the detention pond and placing dirt in the drainage easements. The Court further finds that unless a temporary injunction is granted, the Williams will continue to maintain a dirt and rock dam or berm partially on Lot 11, committing a continuing and active trespass, and will continue to obstruct the drainage of water from the detention pond on Lot 11 into the drainage easements on the Williams Lots. The Court further finds that such unrestrained conduct by the Williams will cause OLE to suffer loss of rights in real property and the use and enjoyment of Lot 11 will be destroyed; the damage to OLE cannot be easily quantified; and money damages cannot

wholly compensate OLE for the loss. Accordingly, the Court finds that OLE faces a probable, imminent, and irreparable injury if injunctive relief is not granted and that OLE has no adequate remedy at law.

As a result, the trial court ordered the Williamses to remove the rock and dirt they had placed on the property of OLE and to restore the drainage easements to the condition that existed before they placed fill dirt and rock in the drainage easements. The trial court also ordered the parties to split evenly the costs of removing the rock and dirt and restoring the drainage easements. This accelerated, interlocutory appeal followed.

**Standard of Review**

"A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)). The question before the trial court is whether the applicant is entitled to preserve the status quo of the litigation's subject matter pending trial on the merits. *Id.*; *see State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975) (defining status quo as the "last, actual, peaceable, non-contested status that preceded the pending controversy"); *see also Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 882 (Tex. App.—Dallas 2003, no pet.) (noting that the underlying merits of the controversy are not legal issues pending before the trial court during a temporary-injunction hearing). "To be entitled to a temporary injunction, the applicant must plead a cause of action and show a probable right to recover on that action and a probable, imminent, and irreparable injury

in the interim." *Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 857 (Tex. App.—Fort Worth 2003, no pet.) (citing *Butnaru*, 84 S.W.3d at 204).

We review a temporary injunction for an abuse of discretion. *See Butnaru*, 84 S.W.3d at 204. A trial court abuses its discretion when it acts unreasonably or in an arbitrary manner or without reference to any guiding rules and principles. *Id.* at 211. We will not disturb the trial court's decision to grant injunctive relief absent a clear abuse of discretion. *Reagan Nat'l Advert. v. Vanderhoof Family Tr.*, 82 S.W.3d 366, 370 (Tex. App.—Austin 2002, no pet.). Our scope of review is limited to the validity of the order granting or denying the temporary injunction. *See id.* When reviewing the order, we view the evidence in the light most favorable to the order, indulging every reasonable inference in its favor, and "determine whether the order was so arbitrary that it exceeds the bounds of reasonable discretion." *Fox*, 121 S.W.3d at 857. "A trial court does not abuse its discretion if it bases its decision on conflicting evidence and evidence in the record reasonably supports the trial court's decision." *Id.*

### Analysis

In their sole issue on appeal, the Williamses contend that the trial court erred by granting OLE's request for injunctive relief because OLE failed to demonstrate imminent and irreparable harm from Michael's self-help actions and because the order granting injunctive relief was overly broad. The Williamses also argue that the mandatory temporary injunction is improper because the purpose of the injunction was not to

maintain the status quo, but rather revert to a state that existed only after OLE's actions, and because a trespass does not require a mandatory temporary injunction.

STATUS QUO

Temporary injunctions are either prohibitive or mandatory. *Tri-Star Petroleum Co. v. Tipperary Corp.*, 101 S.W.3d 583, 592 (Tex. App.—El Paso 2003, pet. denied). While "a prohibitive injunction forbids conduct . . . a mandatory injunction requires it." *Id.* (citing *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.) ("A mandatory injunction requires conduct from a party, whereas a prohibitive injunction forbids conduct.")). Here, the trial court ordered the Williamses to remove the dirt and rock blocking the two drainage points and filling OLE's drainage easements; thus, because the trial court's temporary injunction requires conduct from a party, it takes the form of a mandatory temporary injunction. *See id.*

Among the Williamses' many arguments is that the mandatory temporary injunction is improper because the purpose of requiring the Williamses to remove the dirt and rock blocking the two drainage points and filling the drainage easements was not to maintain the status quo. In fact, the Williamses assert that the current condition, after Michael's self-help actions, is the status quo that existed since they purchased their property. We disagree.

Temporary injunctions preserve the status quo pending trial on the merits. *In re M-I L.L.C.*, 505 S.W.3d 569, 576 (Tex. 2016) (orig. proceeding); *see Clint Indep. Sch. Dist. v.*

*Marquez*, 487 S.W.3d 538, 555-56 (Tex. 2016); *Butnaru v. Ford Motor Co.*, 84 S.W.3d at 204. And as noted earlier, the status quo is "'the last, actual, peaceable, non[-]contested status which preceded the pending controversy.'" *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex. App.—Austin 2000, no pet.) (quoting *Transp. Co. v. Robertson Transps., Inc.*, 152 Tex. 551, 261 S.W.2d 549, 553-54 (1953)). "If an act of one party alters the relationship between the party and another, and the latter contests the action, the status quo cannot be the relationship as it exists after the action." *Benavides ISD v. Guerra*, 681 S.W.2d 246, 249 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.); *see Lifeguard Benefit Servs. v. Direct Med. Network Solutions, Inc.*, 308 S.W.3d 102, 114 (Tex. App.—Fort Worth 2010, no pet.).

The record reflects that the Williamses and OLE both alleged trespass causes of action. The Williamses' trespass claim is premised on flooding purportedly caused by OLE's drainage plan. OLE's trespass claim is premised on Michael's self-help action of blocking two discharge points and filling drainage easements with dirt and rock. The testimony established that the last, actual, peaceable, non-contested status which preceded the pending controversy was when OLE's drainage plan was first effectuated, but before the Williamses experienced flooding on their property. Indeed, in their live pleading, the Williamses acknowledged that the OLE drainage plan was constructed during the fall of 2019 through the spring of 2020, and that "[t]his action caused severe flooding into the front, sides, and backyards of the Williams Properties 'over Willow

Bend Drive' and their neighbor's backyards to the east. This flooding lasted until Mr. Williams closed off drainage from the Pond (Outfall 2) at his own expense." These statements demonstrate that the controversy between the parties did not commence until after the drainage plan was effectuated, flooding commenced, and Michael engaged in self-help. In other words, the status quo is the condition of the drainage points and easements prior to Michael's self-help actions. *See Lifeguard Benefit Servs.*, 308 S.W.3d at 114; *see also Benavides Indep. Sch. Dist.*, 681 S.W.2d at 249.

OLE'S TRESPASS CAUSE OF ACTION

Next, the Williamses contend that the mandatory temporary injunction was improper because OLE failed to demonstrate imminent and irreparable harm, and because a trespass alone does not constitute an irreparable injury. Probable injury includes the elements of imminent harm, irreparable injury, and no adequate remedy at law. *Shor v. Pelican Oil & Gas Mgmt., LLC*, 405 S.W.3d 737, 750 (Tex. App.—Houston [1st Dist.] 2013, no pet.). An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204.

"Trespass to real property is an unauthorized entry upon the land of another, and may occur when one enters—or causes something to enter—another's property." *Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011); *see Env't Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 419 (Tex. 2015) (noting that the Texas Supreme Court "has

consistently defined a trespass as encompassing three elements: (1) entry (2) onto the property of another (3) without the property owner's consent or authorization"). "Every unauthorized entry upon the land of another is a trespass even if no damage is done or the injury is slight . . . ." *McDaniel Bros. v. Wilson*, 70 S.W.2d 618, 621 (Tex. Civ. App.—Beaumont 1934, writ ref'd); *see, e.g., Peter & Camella Scamardo, FLP v. 3D Farms*, No. 10-15-00163-CV, 2016 Tex. App. LEXIS 149, at *4 (Tex. App.—Waco Jan. 7, 2016, pet. denied) (mem. op.) (same); *Withrow v. Armstrong*, No. 10-05-00320-CV, 2006 Tex. App. LEXIS 9994, at **2-3 (Tex. App.—Waco Nov. 15, 2006, pet. denied) (mem. op.) (same).

At the outset, we note that not every trespass constitutes an irreparable injury as a matter of law. *See Amend v. Watson*, 333 S.W.3d 625, 629 (Tex. App.—Dallas 2009, no pet.) ("Similarly, we decline to hold that every trespass constitutes irreparable injury as a matter of law. Instead, applying well-settled Texas law, we conclude that the Amends were required to submit evidence to demonstrate a probable, imminent, and irreparable injury." (citing *Butnaru*, 84 S.W.3d at 204; *Matrix Network, Inc. v. Ginn*, 211 S.W.3d 944, 948 (Tex. App.—Dallas 2007, no pet.))).

However, "[w]here a trespass invades the possession of a person's land, or destroys the use and enjoyment of the land, an injunction is a proper remedy." *Savering v. City of Mansfield*, 505 S.W.3d 33, 49 (Tex. App.—Fort Worth 2016, pet. denied) (citations omitted); *see Yarto v. Gilliland*, 287 S.W.3d 83, 97 (Tex. App.—Corpus Christi 2009, no pet.) (holding that the potential loss of rights in real property is probable, imminent, and

irreparable injury that qualifies a party for a temporary injunction); *Rus-Ann Dev., Inc. v. ECGC, Inc.*, 222 S.W.3d 921, 927 (Tex. App.—Tyler 2007, no pet.) (same); *see also Seghers v. Kormanik*, No. 03-13-00104-CV, 2013 Tex. App. LEXIS 7759, at *14 (Tex. App.—Austin June 26, 2013, no pet.) (mem. op.) (same). Moreover, "[a]n injunction is also a proper remedy to restrain repeated or continuing trespasses where the remedy at law is inadequate because of the nature of the injury or the multiplicity of actions necessary to obtain re-dress." *Beathard Joint Venture v. W. Houston Airport Corp.*, 72 S.W.3d 426, 432 (Tex. App.—Texarkana 2002, no pet.).

OLE pleaded that the Williamses invaded the possession of OLE's land by piling significant volumes of dirt and rock and preventing OLE from enjoying the intended use of that land. Furthermore, Jay Childs, a civil engineer licensed by the State of Texas and the engineer who designed the drainage plan in question, testified that blocking two of the discharge points channels all the outflow to a single discharge point and causes water to sit in the detention pond longer. Chad Adams, the developer of this land, explained that the longer water stays in the detention pond, silt builds up and the grass is killed. Adams and Child also testified that Michael's self-help actions also cause concern about: (1) the potential for flooding neighboring properties; and (2) the potential for violations of contractual obligations OLE has with the City of Oak Leaf to maintain the detention pond. This is sufficient evidence of a "probable, imminent, and irreparable injury." *See*

*Savering*, 505 S.W.3d at 49; *Yarto*, 287 S.W.3d at 97; *Rus-Ann Dev., Inc.*, 222 S.W.3d at 927; *see also Seghers*, 2013 Tex. App. LEXIS 7759, at *14.

THE BREADTH OF THE TEMPORARY-INJUNCTION ORDER

Finally, the Williamses complain that the trial court's temporary-injunction order is overly broad because it compels them to remove dirt from, not only OLE's property, but also their own properties. In other words, the Williamses characterize the trial court's temporary-injunction order as overly broad because it grants more relief to OLE than it is entitled.

We have not located, and the Williamses have not pointed us to, any place in the record before us where they raised their overbreadth objection to the mandatory temporary injunction. The failure to raise an overbreadth complaint in the trial court constitutes a waiver of that complaint on appeal. *See Livingston v. Livingston*, 537 S.W.3d 578, 598 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Hartwell v. Lone Star, PCA*, 528 S.W.3d 750, 765-66 (Tex. App.—Texarkana 2017, pet. dism'd) (citations omitted) (same); *see also Martinez v. Mangrum*, No. 02-17-00235-CV, 2018 Tex. App. LEXIS 2984, at **9-10 (Tex. App.—Fort Worth Apr. 26, 2018, no pet.) (mem. op.) (same); *Ford v. Ruth*, No. 03-14-00460-CV, 2016 Tex. App. LEXIS 3367, at *8 (Tex. App.—Austin Mar. 31, 2016, pet. denied) (mem. op.) ("There is nothing in the record indicating that appellants . . . contended that the permanent injunction was overly broad in district court. Instead, they make these complaints for the first time on appeal and have,

therefore, failed to preserve these issues for review."). By failing to present their overbreadth complaint to the trial court, the Williamses failed to preserve any error regarding the terms of the mandatory temporary injunction. *See* TEX. R. APP. P. 33.1(a); *Livingston*, 537 S.W.3d at 598; *Hartwell*, 528 S.W.3d at 765-66; *see also Martinez*, 2018 Tex. App. LEXIS 2984, at **9-10; *Ford*, 2016 Tex. App. LEXIS 3367, at *8.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by granting the mandatory temporary injunction. *See Butnaru*, 84 S.W.3d at 204; *see also Fox*, 121 S.W.3d at 857; *Reagan Nat'l Advert.*, 82 S.W.3d at 370. Accordingly, we overrule the Williamses' sole issue on appeal.

## Conclusion

We affirm the judgment of the trial court.

STEVE SMITH
Justice

Before Justice Johnson,
    Justice Smith,
    and Justice Rose[3]
Affirmed
Opinion delivered and filed March 15, 2023
[CV06]



---

[3] The Honorable Jeff Rose, Senior Chief Justice (Retired) of the Third Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.