William L. HUNTLEY, Appellant,

v.

ENON LIMITED PARTNERSHIP, A Texas Limited Partnership, Appellee.

No. 2–04–388–CV.

Court of Appeals of Texas, Fort Worth.

June 29, 2006.

---

Cotten Schmidt L.L.P., Rick Disney, Fort Worth, Higier Lautin Foxman McKinney & Owen, P.C., Jennifer L. Owen Addison, for Appellant.

Hill Gilstrap, PC and Frank Gilstrap, Michael D. Schattman and Patricia Larue, Arlington, for Appellee.

Panel B: LIVINGSTON, GARDNER, and WALKER, JJ.

## OPINION

ANNE GARDNER, Justice.

### I. INTRODUCTION

This appeal concerns a dispute over $75,000 in earnest money deposited by Appellant William L. Huntley ("Huntley") pursuant to a contract entered into with Appellee Enon Limited Partnership ("Enon"), a Texas Limited Partnership, for the purchase of a shopping center. Huntley terminated the contract before closing, and both parties claimed that they were entitled to the earnest money. After a bench trial, the trial court entered a judgment ordering that Enon recover the earnest money. In nine issues, Huntley challenges the legal and factual sufficiency of the evidence to support certain findings made by the trial court, arguing that he, and not Enon, is entitled to the earnest money. Because we hold that Huntley is entitled to the earnest money, we reverse and remand.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Huntley invests in real estate properties. In April 2001, Huntley entered into a "Commercial Contract of Sale" (the "Contract") with Enon for the purchase of a strip shopping center owned by Enon and located in Arlington.

### Earnest Money

Along with a purchase price of $2,400,000, the Contract required Huntley to make an earnest money deposit of $25,000 with American Title Company, which he did, and designated $100 of the earnest money as non-refundable. Section 4A of the Contract provided for the following contingency regarding the earnest money: "If this Contract is proper[l]y terminated by [Huntley] pursuant to a right of termination granted to [Huntley] by any provision of this Contract, the Earnest Money, less the non-refundable portion, will be promptly returned to [Huntley], and the parties will have no further rights or obligations under this Contract...."

### Loan Assumption

Regarding financing and loan assumption, Addendum B–1 to the Contract stated that Huntley would assume the unpaid principal balance of the first lien promissory note payable to Midland Loan ("Midland"), the lender, and the obligations imposed by the deed of trust that secured the note. Section 12F provided Huntley with a right of termination *vis-a-vis* the loan assumption. It stated,

> If the lender's written consent is not obtained at or before the Closing, [Huntley] may terminate this Contract by delivering a written termination notice to Seller whereupon the refundable portion of the Earnest Money will be promptly returned to Purchaser and the parties will have no further rights or obligations under this Contract (except for any that expressly survive the termination).

### Enon's Remedy

Enon's remedies for Huntley's failure to close on the Contract were set out in Sec-

tion 13B. It provided, "If [Huntley] fails to close this Contract for any reason *except* Seller's default *or the termination of this Contract pursuant to a right to terminate set forth in this Contract,* [Huntley] will be in default and [Enon] shall elect one of the following, as [Enon's] sole remedy...." [Emphasis added.] Only box (4) was checked. Box (4) provided that Enon may "[t]erminate th[e] Contract and immediately receive the Earnest Money as liquidated damages for [Huntley's] breach of th[e] Contract."

## Integration Clause

Section 16F of the Contract stated that the Contract "contains the complete agreement between the parties with respect to the Property and cannot be varied except by written agreement." Furthermore, the parties agreed that there "are no oral agreements, understandings, representations or warranties made by the parties which are not expressly set forth in this Contract."

## Strict Compliance

Section 16I of the Contract states that "[s]trict compliance with the times for performance is required."

## Amendments to the Contract

On or about May 22, 2001, Huntley and Enon executed a "First Amendment" to the Contract. The First Amendment, among other things, set the loan assumption approval deadline at "no later than September 15, 2001."

On or about August 7, 2001, Huntley and Enon executed a "Second Amendment" to the Contract, which required

that Midland approve Huntley's assumption of the first note without any type of liability for environmental issues, increased the earnest money amount to $75,000, and extended the loan assumption approval deadline date to September 30, 2001. The Second Amendment stated, "It is understood that these funds [the earnest money] are nonrefundable *subject only to loan assumption.*" [Emphasis added.] Huntley deposited the additional $50,000 in earnest money with the title company. The Second Amendment stated that with the exception of the changes therein that superceded the Contract and the "First Amendment," all other terms and conditions remained the same.

## Midland's Loan Assumption Approval

Pursuant to the Contract, Midland faxed a letter to Huntley on September 28, 2001 indicating that it had approved Huntley's assumption of the note. Nothing in the letter indicated the terms and conditions upon which Midland had approved the loan assumption.[1]

By commitment letter dated October 3, 2001, Midland informed Huntley and Enon that it had approved Huntley's assumption of the note. In that letter, however, Midland conditioned its approval upon a number of terms, including the following:

(a) Bob J. Bryant will not be released from liability under the Unconditional Guarantee of Payment and Performance for any loss due to hazardous materials and James A. Ryffel will be required to execute a similar agreement. William L. Huntley will be required to execute a similar agreement effective from the transfer of the Property.

---

1. The substantive portion of the letter states in whole,
 Midland Loan Services, as servicer for the Artesis Mortgage CMBS, Inc.1998–C1 Securitization, has approved the transfer of the strip shopping center located at 2800 For-

estwood Drive, Arlington, Texas from Enon, L.P. to a to be formed limited partnership to be wholly owned by William L. Huntley and assumption of MLS loan # 03–0220099.

(b) The Assumptor will assume all of the obligations and liabilities under the loan documents.

Enon signed and accepted the approval letter; Huntley did not.

### Termination Notice and Subsequent Loan Approval

On November 6, 2001, Huntley provided Enon with written notice terminating the Contract and instructing the escrow to return his earnest money deposits. The notice states, "This cancellation is based on the Second Amendment to the contract, where it states in #1 that I would not be required to assume any type of environmental liability."

On November 8, two days after Huntley had provided notice of termination of the Contract, Midland delivered a revised loan assumption agreement that dropped Huntley's environmental guarantee for the loan assumption. Enon accepted and signed the document; Huntley did not.

### Procedural History

Enon sued Huntley for breach of contract and to enforce the liquidated damages provision in the Contract. Huntley counterclaimed for a refund of the earnest money. Trial was to the court. Only two witnesses were called: Huntley and James Ryffel, one of Enon's limited partners. Huntley testified that he thought that the Contract expired on September 30, 2001, because Midland had not approved his assumption of the existing loan without an environmental liability guarantee and because the eventual guarantee received on October 3, 2001, which required Huntley to assume liability for environmental issues, was untimely. Ryffel testified that the $75,000 in earnest money became nonrefundable upon the signing of the Second Amendment and that the liquidated damages remedy in section 13B of the Contract makes the contract an option contract. The parties stipulated to and the trial court admitted sixty exhibits containing the Contract, amendments, and various correspondence. The trial court rendered judgment for Enon, ordering the title company to pay Enon the earnest money, and awarded Enon its attorney's fees. This appeal followed.

### III. TERMINATION OF THE CONTRACT AND EARNEST MONEY

In nine issues, divided into sub-issues, Huntley challenges certain findings of fact and conclusions of law made by the trial court, which we set out below. Huntley acknowledges that his many issues can be broken down into two primary arguments: (1) Huntley had a right to terminate the Contract when Midland required an environmental guaranty (Issues 1–5) and (2) Huntley was entitled to a refund of the earnest money upon exercising his right of termination under the Contract (Issues 6–9). We address Huntley's issues within the context of these global arguments.

#### A. Standard of Review

 Findings of fact in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). Findings of fact are not conclusive when a complete reporter's record appears in the appellate record, as in this case. *City of Corpus Christi v. Taylor*, 126 S.W.3d 712, 717 (Tex.App.-Corpus Christi 2004, pet. withdrawn). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996).

 A legal sufficiency challenge may only be sustained when: (1) the record discloses a complete absence of evidence of

a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998), *cert. denied,* 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX. L.REV. 361, 362–63 (1960). Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). We credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless jurors could not. *Id.* A trial court's conclusions of law are reviewed de novo as legal questions. *Boyd v. Boyd,* 67 S.W.3d 398, 404 (Tex.App.-Fort Worth 2002, no pet.). We accord no deference to the lower court's decision. *Quick v. City of Austin,* 7 S.W.3d 109, 116 (Tex. 1998). Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Boyd,* 67 S.W.3d at 404.

## B. Contract Interpretation

We apply well established rules of contract interpretation when construing the Contract and its amendments. Specifically, when construing a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). We must examine and consider the entire writing in an effort to harmonize and give effect to all provisions so that none are rendered meaningless. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003); *Coker,* 650 S.W.2d at 393. If the written instrument is so worded that it can be given a definite or certain legal meaning, then the contract may be construed as a matter of law. *Coker,* 650 S.W.2d at 393. Here, there is no issue or argument that the Contract and its amendments are ambiguous.

## C. Huntley's Right to Terminate the Contract

Huntley argues that he had a right to terminate the Contract when Midland required an environmental guaranty. He argues that the evidence is legally insufficient to support the trial court's first, fifth, sixth, seventh, and eighth findings of fact and conclusions of law, which are as follows:

1. [A]ll conditions precedent have been met or have been performed.

. . . .

5. In September 2001, the contract was extended orally, and the closing date extended; but no other material or essential terms of the contract were changed by this oral extension.

6. The buyer, defendant William L. Huntley, failed to close the sale by the date set for closing.

7. The buyer's failure to complete the sale was not excused by any terms of the contract. No term of the contract operated to permit terminat[ion] by the buyer.

8. The contract was conditioned only on approval by the bank of assumption of the loan by Huntley. The bank did approve the assumption. While the bank, at one time, required an environmental guaranty; at the request of the seller, the bank waived any requirement of an environmental guaranty.[2]

Findings of fact and conclusions of law numbers five, seven, and eight (challenged in Huntley's second, fourth, and fifth is-

---

**2.** The trial court did not separately label its findings of fact and conclusions of law.

sues) are dispositive to our review. We agree that Huntley had a right to terminate the Contract because the evidence is legally insufficient to support finding of fact number five and because conclusions of law numbers seven and eight are erroneous as a matter of law. The evidence demonstrates that Huntley was permitted to terminate the Contract, that Midland waived the environmental guaranty only after Huntley terminated the Contract, and that the loan assumption deadline was not extended orally.

■ We first address the trial court's conclusions of law number seven and the first sentence of number eight. Addendum B–1 to the Contract required Huntley to assume the unpaid principal balance of the first note payable to Midland, and Section 12F of the Contract permitted Huntley to terminate the Contract by written notice if Midland's consent to the loan assumption was not obtained at or before closing. Addendum B–1 provided that Huntley "shall assume" the loan. There are no conditions. The First and Second Amendments to the Contract altered certain portions of the Contract. The First Amendment set the loan approval deadline at September 15, 2001, and the Second Amendment to the Contract extended the deadline to September 30, 2001. In addition to the approval deadline, the Second Amendment required that the loan assumption be approved by Midland without Huntley assuming any liability for environmental issues.

Enon argues that Huntley did not have a right to terminate the Contract and that Huntley's subsequent termination of the Contract constituted a breach of the Contract because Midland approved Huntley's assumption of the loan. Enon's argument, however, is unpersuasive because it ignores the Second Amendment's requirement that Huntley assume the loan without any liability for environmental issues.

Enon must base its approval argument on either the initial approval notice dated September 28, 2001, the October 3, 2001, approval notice, or the approval notice dated November 8, 2001. Although the September 28 approval notice indicates that Midland had approved the loan assumption, it does not indicate any of the terms or conditions upon which the loan assumption had been approved. Conversely, the letter faxed by Midland on October 3 set forth the conditions upon which the loan assumption had been approved, including that Huntley assume liability for environmental issues. The November 8 approval notice waived Huntley's environmental liability guarantee.

Because the October 3 letter required Huntley to assume environmental liability and because the November 8 letter expressly waived environmental liability, it is clear that the September 28 letter did not serve as Midland's approval of the loan assumption absent a requirement that Huntley assume liability for environmental issues as required by the Second Amendment, but was, indeed, directly contrary to the express requirement of the Second Amendment that the loan assumption be free of any such assumption of environmental liability. Midland withdrew its requirement that Huntley assume environmental liability in the November 8 letter, but this was more than a month after the September 30 deadline set by the Second Amendment requiring that Midland approve Huntley's assumption of Enon's loan without any environmental liability and two days after Huntley had provided written notice terminating the Contract on November 6, 2001.

Section 12F provided Huntley with a right to terminate the Contract if approval was not obtained. Ryffel acknowledged that there were three requirements for the assumption of the loan as contemplated by

the Second Amendment: (1) approval by Midland; (2) without requiring a guaranty from Huntley for environmental issues; and (3) approving the loan assumption by the deadline, September 30, 2001. But Midland did not approve Huntley's loan assumption without requiring an environmental liability guarantee before September 30, 2001. Consequently, Huntley was entitled to give written notice terminating the Contract, which he did on November 6, 2001. Moreover, Midland's waiver of Huntley's environmental liability guarantee in its November 8, 2001, approval of Huntley's loan assumption was untimely. Accordingly, the trial court's conclusion of law number seven that Huntley's failure to complete the sale was not excused by any terms of the Contract and that no term of the Contract permitted Huntley to terminate the Contract is erroneous as a matter of law. In addition, the trial court's conclusion of law number eight that the Contract was conditioned only on Midland's approval of the loan assumption is also erroneous as a matter of law. We hold that the Contract gave Huntley a right of termination and that the Contract's condition approving Huntley's loan assumption without an environmental guarantee was not waived by Midland until after Huntley properly terminated the Contract. We sustain Huntley's fourth and fifth issues.

■ Enon nonetheless argues that the parties mutually extended the deadline for Midland's approval by an oral modification. This is the trial court's finding of fact number five. Enon refers generally to phone conversations and correspondence between the parties during October 2001, negotiations as to terms of a proposed environmental indemnity agreement, discussions about repairs that Huntley required to be made to the property, and a lack of any indication by Huntley that he intended to terminate the Contract. None of this, however, is evidence of an oral modification of the loan assumption deadline. The correspondence does not state that the deadline for the approval of the loan assumption has been extended, and it is not a reasonable inference that a lack of any indication by Huntley that he was intending to terminate the Contract means that the parties were extending the loan assumption approval deadline. Moreover, Section 16F of the Contract provides that there are no oral agreements or understandings made by the parties that are not expressly set forth in the Contract. The Contract's integration clause thus effectively precludes Enon's argument. Accordingly, the evidence is legally insufficient to support finding of fact number five.[3] We sustain Huntley's second issue.

## D. Huntley's Refund of the Earnest Money

■ Having determined that Huntley appropriately terminated the Contract, we now turn to his second argument that he, not Enon, was entitled to a refund of the earnest money. Huntley argues that the evidence is legally insufficient to support the trial court's ninth, tenth, and thirteenth findings of fact and conclusions of law, which are as follows:

9. [T]he plaintiff, Enon L.P., expended funds making substantial improvements and repairs to the property requested by Huntley.

10. Huntley's failure to close was a breach of contract.

. . . .

13. [T]he contract was an "option contract," and Enon's, L.P.'s, only remedy is the payment to it of the non-refunda-

---

3. Having determined that the evidence is legally insufficient to support the trial court's finding of fact number five, we need not address Huntley's argument that the evidence is factually insufficient to support the finding. See Tex.R.App. P. 47.1.

ble deposit of $75,000.00.... Having then terminated the contract and demanding the deposit, plaintiff is entitled to that sum, plus any accrued interest, currently on deposit with American Title Company.

Huntley further argues that the trial court erred by adopting Enon's interpretation of the Second Amendment because that interpretation is unreasonable, unsupported by legally and factually sufficient evidence, and would render the Second Amendment meaningless. Conclusion of law number thirteen (challenged in Huntley's ninth issue) is dispositive to our review. We agree that Huntley was entitled to a refund of the earnest money upon terminating the Contract; conclusion of law number thirteen is erroneous as a matter of law.

The Contract required Huntley to make an earnest money deposit of $25,000. $100 was designated as nonrefundable. Section 4A provided that the earnest money, less the nonrefundable portion, would be returned to Huntley if he properly terminated the Contract. Section 12F likewise stated that the refundable portion of the earnest money would be returned to Huntley if the lender's consent for the loan assumption was not obtained and Huntley provided written notice that he was terminating the Contract.

The Second Amendment increased the earnest money to $75,000 and provided, "It is understood that these funds are nonrefundable *subject only to loan assumption.*" [Emphasis added.] The "subject only to loan assumption" means that Huntley's assumption of the loan must have been approved in order for the earnest money to

be nonrefundable. As discussed above, Midland required Huntley to assume liability for environmental issues as a condition to approving his loan assumption despite the parties' agreement in the Second Amendment that the loan assumption be approved without an environmental guarantee. Huntley subsequently terminated the Contract before Midland waived the environmental guarantee condition. Therefore, Huntley never assumed the original loan. Under the clear and unambiguous terms of the Contract, Huntley is entitled to a refund of the earnest money.[4]

Enon argues that the earnest money became nonrefundable when Huntley signed the Second Amendment. Consistent with Ryffel's testimony, Enon argues that there were only two possible dispositions with the earnest money: (1) the parties could have closed, and the earnest money would have been applied to the purchase price, or (2) the transaction would not close, and the seller (Enon) would retain the earnest money. Enon's argument completely fails to recognize and address that part of the Second Amendment stating that the earnest money was nonrefundable "subject only to loan assumption." The Second Amendment conditions the nonrefundable status of the earnest money on Midland's approval of Huntley's loan assumption by using the phrase "subject only to loan assumption."[5]

Enon might be relying on Section 13B of the Contract to support its argument that the earnest money became nonrefundable upon Huntley's signing of the Second Amendment. Enon also argues that if Huntley's termination of the Contract was

---

4. Huntley acknowledges that $100 of the earnest money is nonrefundable.

5. At trial, when questioning Ryffel about the disposition of the earnest money and the phrase "subject only to loan assumption,"

Huntley's counsel asked hypothetically what would happen to the earnest money if Midland had not approved Huntley's assumption of the loan after seeing Huntley's financial. Ryffel, again, answered that Enon would retain the earnest money.

not the result of Enon's breach, then the termination would trigger its right to receive the earnest money as liquidated damages. This argument is also based upon Section 13B of the Contract. But Section 13B provides that Enon is entitled to receive the earnest money as liquidated damages "[i]f [Huntley] fails to close th[e] Contract for any reason *except* Seller's default *or* the termination of this Contract pursuant to a right to terminate set forth in this Contract." [Emphasis added.] Huntley terminated the Contract pursuant to a right of termination set forth in the Contract. Section 13B's remedy allowing Enon to recover the earnest money as liquidated damages was therefore never triggered.

Enon also argues that numerous cases "hold that when the seller's only remedy is retention of the earnest money as liquidated damages, then a contract is an option contract." Enon thus contends that it was entitled to receive the earnest money because the Contract was an option contract. *See Chambers County v. TSP Dev., Ltd.*, 63 S.W.3d 835, 838 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). Although Enon cites an accurate statement of law, it does not alter the clear terms of the Contract and Second Amendment, which set conditions on Midland's approval of Huntley's loan assumption and allow for the earnest money to be refunded to Huntley. Both parties signed the Contract, and both parties signed the Second Amendment. Long established rules of contract interpretation require us to consider the entire Contract and to give effect to all of its provisions so that none are rendered meaningless. *See Coker*, 650 S.W.2d at 393. Accepting Enon's argument that it is entitled to receive the earnest money as liquidated damages because the Contract is an option contract would violate these rules. The trial court's conclusion of law number thirteen is erroneous as a matter of law. We hold that Huntley was entitled to a refund of the earnest money after he terminated the Contract. We sustain Huntley's ninth issue.

## IV. CONCLUSION

 The trial court's seventh, eighth, and thirteenth conclusions of law are erroneous as a matter of law; Huntley was permitted to terminate the Contract, Midland waived the environmental guarantee only after Huntley terminated the Contract, and Huntley was entitled to a refund of the earnest money after terminating the Contract. The evidence is legally insufficient to support the trial court's fifth finding of fact; the loan assumption deadline was not extended orally. Having sustained Huntley's second, fourth, fifth, and ninth issues, we reverse and remand to the trial court for further proceedings.[6] *See* TEX.R.APP. P. 43.2(d).

---

6. Generally, when an appellate court sustains a legal sufficiency issue, the remedy is to reverse and render judgment. *Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176–77 (Tex. 1986). However, because Huntley asserted his legal sufficiency complaint only in his motion for new trial, we must remand the case instead of rendering judgment. *See Hor-* *rocks v. Tex. Dep't of Trasp.*, 852 S.W.2d 498, 498–99 (Tex.1993) (holding that an appellate court cannot reverse and render on a legal sufficiency point raised only in a motion for new trial); *Hutchison v. Pharris*, 158 S.W.3d 554, 562 n. 8 (Tex.App.-Fort Worth 2005, no pet.).