# NO. 12-09-00225-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BRADY W. CHAMBERS AND EVELYN B. CHAMBERS, APPELLANTS* | § | *APPEAL FROM THE 188TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *HUNT PETROLEUM CORPORATION, APPELLEE* | § | *GREGG COUNTY, TEXAS* |

## *OPINION*

This is an appeal from a judgment granting specific performance to Hunt Petroleum Corporation of an option to purchase, and awarding damages and attorney's fees. In three issues, Brady W. Chambers and Evelyn Chambers contend that (1) the option had expired because Hunt failed to timely tender the $100.00 purchase money, (2) Hunt was not entitled to enforce the option because it was in default on the contract's provisions, and (3) there was insufficient evidence to support the award of damages. We affirm the trial court's order for specific performance, reverse and render the award of damages, render judgment awarding taxes paid by the Chamberses, and remand the cause for a redetermination of attorney's fees.

### BACKGROUND

The parties' predecessors in interest, Sonat Exploration Company and First Church of the Nazarene, on August 7, 1992, entered into a lease with an option to purchase involving 3.94 acres of a 7.94 acre tract in Longview, Gregg County, Texas. The term of the lease was fifteen years. Sonat paid $39,300.00 at the execution of the lease "as rent for the entire lease term." The lease required Sonat to pay all ad valorem taxes and other costs during the term "as if it were

the fee simple owner," and provided that the church would have no ownership responsibilities. The lease granted Sonat the exclusive option to purchase the 3.94 acre tract "at any time prior to the end of the lease term." The lease and the option were assignable. The option agreement contained the following provision:

> The option shall be exercisable by giving written notice to the Lessor prior to the end of the lease and the purchase shall be completed by conveyance of the property by General Warranty Deed and payment of the purchase price within sixty (60) days from the delivery of the notice of the intent to exercise the option. The purchase price shall be one hundred dollars ($100) to be paid in cash at closing.

On November 22, 2004, the Chamberses bought the 7.94 acre tract that was subject to the lease for $50,000.00. Shortly thereafter, the Chamberses received notice from the City of Longview that excessive overgrowth on the tract was a violation of the municipal code. Brady Chambers contacted Hunt Petroleum Corporation, the successor in interest to Sonat, to notify it of the problem and its responsibility under the lease to clear the 3.94 acre tract to correct the code violations.

In May 2005, Hunt hired a contractor to clear and mow the 3.94 acres. The contractor "began clearing the approximately 8 acres, our half and as a favor to Mr. Chambers, his half also." The cost for clearing and mowing the 7.94 acres was $17,353.00. The foreman's memo noted that "there was a brush and dirt pile on Mr. Chambers['s] half of the property that was buried in a pit that we dug. We put the excess dirt in a low area on his side to help it from collecting water." The foreman's memo also stated that "[w]e thought it would be in our best interest to help out Mr. Chambers by cleaning up his side." Hunt mowed the entire tract in 2006 and 2007. Only the $4,625.00 cost of the 2007 mowing was charged to this tract.

The Chamberses paid $1,698.00 in taxes attributable to Hunt's 3.94 acres.

On July 16, 2007, Brad Russell, district landman for Hunt, sent the Chamberses formal notice of Hunt's exercise of its option to purchase. Russell stated in the letter that Hunt would prepare a plat and general warranty deed for the Chamberses' review. The Chamberses did not respond. Russell sent another letter to the Chamberses on September 8, 2007, once again informing them that Hunt was exercising the option in the lease and enclosing a general warranty deed. Russell asked the Chamberses to review the deed and sign it. In his letter, Russell stated that he would call the Chamberses and fix a time to meet with them to pay the $100.00 purchase

price, pursuant to the lease terms. The Chamberses did not respond to this letter. On September 20, 2007, Russell sent a third letter to the Chamberses referring to the numerous occasions that Hunt had attempted without success to communicate with them by telephone despite Hunt's leaving several messages for them on their voice mail. Another warranty deed was enclosed for the Chamberses to execute. The letter concluded by asking the Chamberses to call one of two numbers to schedule a time to close. The Chamberses did not respond to the third letter.

On October 8, 2007, Hunt received a letter from the Chamberses' lawyer advising Hunt it was in default under the lease, and, as a result, was now holding over.

On November 5, 2007, the Chamberses filed a suit to quiet title to the 3.94 acre tract. They sought a declaration that the option to purchase was invalid on various grounds, and judgment awarding them the back taxes they had paid on the property.

Hunt counterclaimed seeking a declaration that the option was valid and a decree ordering its specific performance. It also sought an award of 50.6% of the land clearing and mowing costs under the theory of quantum meruit, and attorney's fees.

The trial court found that Hunt had properly and timely exercised its option. The trial court ordered the Chamberses to execute a warranty deed, and, upon its delivery, that Hunt tender $100.00 to the Chamberses. The court also awarded Hunt $11,132.00 in damages (50.6% of the total clearing and mowing charges), and $29,289.91 in attorney's fees.

## DID THE OPTION EXPIRE BECAUSE OF HUNT'S FAILURE TO TENDER THE $100.00 PURCHASE MONEY?

In their first issue, the Chamberses contend that the option to purchase expired because Hunt failed to meet its contractual obligation to tender the $100.00 purchase price within the sixty day period allowed for closing after its notice of exercise of the option. They maintain that there are no special circumstances that serve to excuse Hunt from strict compliance with the contract's terms. The Chamberses argue that there is no evidence, or at least insufficient evidence, or findings to support the trial court's conclusion that they were solely to blame for the failure to close.

## Standard of Review

In an appeal from a bench trial, the trial court's findings of fact have the same force and effect as a jury verdict and are reviewable for legal and factual sufficiency under the same standards that are applied to the review of a jury verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991).

When reviewing a finding for legal sufficiency, we must credit evidence favorable to the judgment if a reasonable fact finder could, disregard contrary evidence unless a reasonable fact finder could not, and reverse the fact finder's determination only if the evidence presented in the trial court would not enable a reasonable and fair minded fact finder to reach the judgment under review. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). The court should sustain an appellant's legal sufficiency challenges if the record reveals (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence conclusively establishes the opposite of a vital fact. *Id.* More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex. 2004).

When considering a factual sufficiency challenge, we consider all of the evidence and set aside the judgment only if it so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

We review the trial court's conclusions of law de novo. *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996).

## Applicable Law

Strict compliance with the provisions of an option contract is required. *See Jones v. Gibbs*, 133 Tex. 627, 639-40, 130 S.W.2d 265, 271 (Tex. Comm'n App. 1939, opinion adopted). Exercise of an option must be unqualified and strictly in accordance with the terms of the agreement, unless equity requires otherwise. *City of Brownsville v. Golden Spread Electric Coop.*, 192 S.W.3d 876, 880 (Tex. App.–Dallas 2006, pet. denied).

However, the failure of the optionee to comply strictly with the terms or conditions of the option will be excused when the failure is brought about by the conduct of the optionor. *Jones*, 133 Tex. at 640, 130 S.W.2d at 272. "It is thoroughly settled that where a defendant has openly

and avowedly refused to perform his part of the contract or declared his intention not to perform it, the plaintiff need not make tender of payment of the consideration before bringing suit." *Burford v. Pounders*, 145 Tex. 460, 466, 199 S.W.2d 141, 144 (Tex. 1947); *Rus-Ann. Dev., Inc. v. ECGC, Inc.*, 222 S.W.3d 921, 927 (Tex. App.–Tyler 2007, no pet.). Formal tender is excused when tender "would be a useless and idle ceremony." *Burford*, 145 Tex. at 467, 199 S.W.2d at 145. A tender of consideration is excused where the optionor intentionally avoids giving the purchaser an opportunity of making it. 81 C.J.S. *Specific Performance* § 116 (1977).

## Discussion

The trial court made the following findings of fact germane to this issue.

> 10. On July 16, 2007, prior to the expiration of the Lease with Option, Defendant gave Plaintiffs written notice of its election to exercise the option to purchase the 3.94 acres. Plaintiffs received this notice on or about July 25, 2007, but made no response to it.
>
> 11. Subsequent to July 25, 2007, Defendant made several attempts to contact Plaintiffs, both in writing and by telephone, in order to arrange a closing of the purchase of the 3.94 acres in accordance with the terms of the Lease with Option, but Plaintiffs ignored all of [Defendant's] attempts to do so.
>
> 12. Defendant was at all material times ready, willing and able to close the purchase of the 3.94 acres pursuant to the terms of the Lease with Option.

Based on these findings, the trial court concluded that "the failure to close was solely the fault of the [Chamberses]."

The Chamberses acknowledge that "[i]t is thoroughly settled that where a defendant has openly and avowedly refused to perform his part of the contract or declared his intention not to perform it, the plaintiff need not make tender of payment of the consideration before bringing suit." *See Burford*, 145 Tex. at 466, 199 S.W.2d at 144; *Rus-Ann Dev.*, 222 S.W.3d at 927. However, the Chamberses insist that their silence in response to Hunt's attempts to communicate with them did not amount to an open refusal to perform the contract that might serve to excuse Hunt's tender of the $100.00 consideration. The lease agreement required payment of the $100.00 consideration within sixty days of the notice of the exercise of the option. The Chamberses argue that because Hunt did not timely pay the consideration, its attempt to exercise the option was not "strictly in accordance with the terms of the agreement" and therefore ineffective. *See Besteman v. Pitcock*, 272 S.W.3d 777, 784 (Tex. App.–Texarkana 2008, no pet.).

We disagree. The trial court was justified in inferring that the Chamberses' refusal to respond to Hunt's repeated attempts to communicate with them during the critical sixty day period for closing was calculated to defeat Hunt's exercise of its option. Almost immediately after the expiration of the lease and the sixty days provided for closing of Hunt's exercise of its option, the Chamberses did communicate with Hunt giving it formal notice to vacate the premises. In our view, the Chamberses' conduct was tantamount to a refusal to perform their part of the contract. A tender of consideration is excused where the optionor intentionally avoids giving the purchaser an opportunity of making it. *See* 81 C.J.S *Specific Performance* § 116. A tender of the nominal $100.00 consideration under these circumstances "would have been a vain and useless thing." *See **Burford***, 145 Tex. at 466, 199 S.W.2d at 144.

Ample evidence supports the trial court's findings. The findings support its conclusion that the failure to close within sixty days following Hunt's notice was solely the fault of the Chamberses. The Chamberses' first issue is overruled.

### IS A PARTY IN DEFAULT ON OTHER CONTRACT PROVISIONS ENTITLED TO ENFORCE AN OPTION IN THAT CONTRACT?

Article III of the lease required the lessee, Hunt, to pay "all ad valorem taxes during the term of the lease" and to pay "all other costs associated with the property as if it were the fee simple owner." In their second issue, the Chamberses maintain that Hunt is not entitled to the equitable remedy of specific performance of the option provided by Article V of the lease because it had breached the agreement by failing to pay the taxes on the 3.94 acres, and by allowing the tract to become overgrown in violation of the contract and the Longview municipal code. The question presented is whether Hunt's breach of the covenant to pay the taxes and other costs associated with the property excuses the Chamberses' performance of the contract's option provision.

**Applicable Law**

"A prerequisite to the remedy of excuse of performance is that the covenants in a contract must be mutually dependent promises." ***Hanks v. GAB Bus. Servs., Inc.***, 644 S.W.2d 707, 708 (Tex. 1982). "[W]hen a covenant goes only to part of the consideration on both sides and a breach may be compensated for in damages, it is to be regarded as an independent covenant, unless this is contrary to the expressed intent of the parties." ***Id***. A "condition precedent" in a

contract is an event that must occur or an act that must be performed before a right can accrue to enforce an obligation." **Centex Corp. v. Dalton**, 840 S.W.2d 952, 956 (Tex. 1992). Such terms as "if," "provided that," "on condition that," or some similar phrase of conditional language are normally required to create a condition precedent. **Criswell v. European Crossroads Shopping Ctr.**, 792 S.W.2d 945, 948 (Tex. 1990). Courts will not construe a contract provision as a condition precedent unless they are compelled to do so by language that may be construed in no other way. *See* **Reilly v. Ranger Mgmt., Inc.**, 727 S.W.2d 527, 530 (Tex. 1987). "If a contract contains a condition precedent, it must either have been met or excused before the other party's obligation can be enforced." **Cal-Tex Lumber Co. v. Owens Handle Co.**, 989 S.W.2d 802, 809 (Tex. App.–Tyler 1999, no pet.).

"A court may refuse to grant equitable relief [specific performance] to a [party] who has been guilty of unlawful or inequitable conduct regarding the issue in dispute." **Lazy M Ranch, Ltd. v. TXI Operations, LP**, 978 S.W.2d 678, 683 (Tex. App.–Austin 1998, pet. denied).

**Discussion**

We conclude that the requirement found in Article III of the lease that the lessee pay taxes and other ownership costs associated with the 3.94 acre tract is a covenant independent of the option agreement found in Article V. It is not a dependent covenant or condition precedent whose nonperformance would render the option agreement unenforceable by Hunt.

A breach by Hunt of its obligations under Article III is readily compensable by damages. The lease contains no language from which it may be even inferred that the parties intended to condition the lessee's enforcement of the option agreement upon its payment of taxes and other costs associated with the property. An examination of the entire agreement reveals no relationship between the taxes and other costs provision and the option provision. There is no conditional language indicating that the enforceability of the option is dependent upon Hunt's performance of its obligations under Article III.

In **Cook v. Young**, 269 S.W.2d 457 (Tex. Civ. App.–Fort Worth 1954, no writ), the lessee sought specific performance of an option to purchase clause in the lease agreement. *Id*. at 458. The lessor argued that the grant of summary judgment in the lessee's favor was improper, because there was a fact issue regarding whether the lessee had complied with a term of the lease requiring that it pay all the utility bills for the leased property. *Id*. at 460. The court of appeals held that compliance with the terms of the lease was not a condition precedent to the lessee's

exercise of the option. *Id.* The court stated that "[w]hile we find such a provision in the lease contract, we do not find it in that part of the instrument containing the option to purchase. The option is unconditionally granted and there is no requirement creating any condition precedent or otherwise limiting the right to exercise the option." *Id.*

In *Giblin v. Sudduth*, 300 S.W.2d 330 (Tex. Civ. App.–Austin 1957, writ ref'd n.r.e.), a contract for the sale of land also gave the buyer an option to buy an adjoining tract. The option provided as follows:

> The seller agrees to give the purchaser an option on the acre tract joining the property they are buying from the seller on the east; this option will be for 5 years and the purchasers can take up their option at any time within 5 years from date by paying the seller $1500.00 in cash. The purchaser agrees to pay a yearly rental of $10.00.

*Id.* at 332. The court of appeals held that the purchaser's failure to pay the rent did not bar the purchaser's exercise of the option. "The option was not conditioned upon the payment of the annual rental, the option was for five years[,] and the purchasers were allowed to take up their option at any time within five years by paying the seller $1500.00 in cash." *Id.*

In a case cited by the Chamberses, *Lazy M Ranch, Ltd. v. TXI Operations, LP*, the contract required TXI to pay Lazy M $2,000.00 for the right to conduct subsurface tests for gravel on part of the Lazy M land – 1,669 acres specifically described by metes and bounds. *Lazy M Ranch*, 978 S.W.2d at 680. For the same consideration, the contract gave TXI the option to lease 300 acres out of the 1,669 acres to mine subsurface materials. To exercise the option, the contract required TXI (1) to give Lazy M written notice of its decision to exercise the option within six months of the execution of the contract and (2) tender $98,000.00 to Lazy M. TXI attempted to exercise the option by delivering written notice accompanied by a $98,000.00 bank check. Lazy M returned the check with a letter explaining that it would not lease the land, because TXI had breached the contract by entering on and testing Lazy M's land outside the 1,669 acres specified in the contract. *Id*. The uncontradicted summary judgment evidence showed that, despite Lazy M's repeated objections, TXI intentionally persisted in coring and testing outside of the area subject to the agreement. In conducting these tests, TXI stole valuable information about the subsurface potential of the ranch. *Id*. at 681.

The Austin Court of Appeals held that TXI's conduct constituted a material breach of an implied covenant not to explore outside the area agreed upon. *Id*. Consistent with the other

opinions cited, the court of appeals acknowledged that having decided that TXI's conduct was a material breach of an implied covenant, it must determine whether the implied covenant was independent or dependent. *Id*. A breach of an independent covenant would give the nonbreaching party only a cause of action for damages resulting from the breach. *Id.* The breach of a dependent covenant gives the nonbreaching party the election to terminate the contract. *Id.* In that event TXI would have forfeited its option. "Forfeitures will be avoided unless [the] contract language admits of no other construction or results in a construction that is unreasonable, inequitable, or oppressive." *Id*. (citing **Reilly**, 727 S.W.2d at 530). The court considered several factors in determining whether it would be inequitable and oppressive to characterize a party's nonperformance as merely a breach of an independent covenant: (1) the extent to which the nonbreaching party will be deprived of the benefit it reasonably could have anticipated had the breach not occurred, (2) the extent to which the injured party can be adequately compensated for the part of the benefit lost, (3) the likelihood that the defaulting party will cure its failure, and (4) the extent to which the conduct of the party failing to perform comports with standards of good faith and fair dealing. *Id*. at 681-82 (citing RESTATEMENT OF CONTRACTS (SECOND) § 241(a) (1981)); **Hernandez v. Gulf Group Lloyds**, 875 S.W.2d 691, 693 (Tex. 1994)).

The Chamberses stress that Hunt was unaware of the option to purchase until they informed Hunt that the 3.94 acres was overgrown and that the lease required Hunt to maintain the tract in compliance with the municipal code. The Chamberses speculate that but for their notice, Hunt would have remained ignorant of their option to purchase and probably would have failed to exercise it. The Chamberses paid the taxes on the entire tract. They claim they bought the entire tract without knowledge of the easement. The equities, the Chamberses contend, favor them and make it inequitable and oppressive to reward Hunt by enforcing the option.

We, on the contrary, believe the equities weigh in Hunt's favor. The $100.00 to be paid at closing was nominal in that it bore no relationship to the value of property exchanged. The real price paid for the tract upon the option's exercise was embraced within the $39,600.00 consideration already paid by the lessee at the execution of the lease in 1992. The lease was of record when the Chamberses bought the property. The Chamberses secured a title policy when they bought the property in 2004. The lease with option to purchase was pointed out in the

policy as an exception to coverage. The Chamberses knew or should have known of the option to purchase when they bought the property.

Once informed that the 3.94 acres was overgrown, Hunt responded immediately by clearing the tract to cure the problem and comply with the contract and the municipal code. The Chamberses complain of Hunt's failure to pay the ad valorem taxes on the 3.94 acres from November of 2004 when they bought the 7.96 acres until the time of trial. The Chamberses, as record owners, received the tax notices for the entire tract. They concede they never informed Hunt regarding the taxes or asked it to pay its pro rata share. Even if Hunt had neglected to pay the taxes after being told what was due, the injured party could have been adequately and easily compensated by damages. Hunt's conduct deprived the Chamberses of no benefit it reasonably could have anticipated. Hunt's conduct was fully consistent with standards of good faith and fair dealing.

We have weighed the equities using the criteria set out in *Lazy M*. Fairness does not require that we regard the covenants breached by Hunt as constructively dependent in order to avoid an inequitable or oppressive result. The covenants breached by Hunt were independent covenants whose nonperformance will not excuse the nonbreaching party's performance. Hunt's predecessor had already paid all but $100.00 of the actual consideration for the property. Hunt was never informed of the amount of taxes due nor was it asked to pay them. A forfeiture of Hunt's option because of its breach of an independent covenant to pay those taxes would be genuinely inequitable and oppressive. The Chamberses' second issue is overruled.

### IS THE EVIDENCE SUFFICIENT TO SUPPORT THE AWARD OF DAMAGES FOR CLEARING AND MOWING?

In their third issue, the Chamberses contend that the evidence is legally and factually insufficient to support the award to Hunt of $11,132.00 representing 50.6% of the clearing and mowing charges Hunt incurred on the entire tract. The Chamberses' share of the 7.96 acres equals 50.6%.

The foreman's memo showing the cost for clearing and mowing the entire tract stated "on 5-04-2005, M & J Construction began clearing approximately 8 acres (our half and as a favor to Mr. Chambers, his half also. . . ." The memo detailed how Mr. Chambers had met with him and

stated, "We thought it would be in our best interest to help out Mr. Chambers by cleaning up his side."

Brady Chambers testified that he walked around the tract with the foreman and the contractor. Chambers recalled that they told him that he was being so nice that they would clean up the brush piles he had on his side. He testified that he had never asked Hunt to mow his property. Chambers stated that, in fact, he had already had his part of the tract mowed for $200.00. In 2005, Hunt spent $17,353.28 on the property, but it charged only $4,625.00 to this property in 2007. Hunt never asked for payment for this work, the bulk of which was performed in May 2005, almost four years before trial in April 2009. Hunt sought to recover under the doctrine of quantum meruit.

## Applicable Law

"To recover under the doctrine of quantum meruit, a plaintiff must establish that: (1) valuable services and/or materials were furnished, (2) to the party sought to be charged, (3) which were accepted by the party sought to be charged, and (4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient." ***Heldenfels Bros., Inc. v. City of Corpus Christi***, 832 S.W.2d 39, 41 (Tex. 1992). The measure of damages for a claim in quantum meruit is the reasonable value of the work performed and the materials furnished. ***M.J. Sheridan & Son Co. v. Seminole Pipeline Co.***, 731 S.W.2d 620, 625 (Tex. App.–Houston [1st Dist.] 1987, no writ).

## Discussion

Hunt proved the expense it incurred in clearing and mowing the 7.96 acres by the memos and invoices. Hunt's own evidence shows that the work on the Chamberses' half was done "as a favor to Mr. Chambers." The same memo states, "We thought it would be in our best interest to help out Mr. Chambers by cleaning up his side."

This is consistent with Chambers's testimony that he was led to believe that Hunt buried the brush piles on his part of the tract as a favor for his cooperation. Brad Russell, Hunt's landman who testified to the clearing and mowing costs, conceded that he had no reason to disbelieve Chambers's testimony. Hunt, he told the court, had never previously asked the Chamberses to pay any part of the clearing and mowing costs, although most of the work had been done four years before.

The party seeking to recover in quantum meruit must establish that the work done was accepted by the party to be charged "under such circumstances as reasonably notified the recipient that the plaintiff in performing expected to be paid by the recipient." *See Heldenfels Bros., Inc.,* 832 S.W.2d at 41.

There is an absolute absence of any evidence in this record indicating that Hunt expected to be paid for the work done on the Chamberses' part of the tract. The evidence, in fact, conclusively establishes the contrary. The Chamberses' third issue is sustained.

### CONCLUSION

That part of the judgment granting specific performance of the option to purchase the 3.94 acres is *affirmed*. The award of damages to Hunt in the amount of $9,433.61 ($11,132.00 clearing and mowing costs less $1,698.39 taxes paid by Chambers attributable to the 3.94 acres) is *reversed* and judgment *rendered* that Hunt take nothing on its claim for clearing and mowing costs. Judgment is *rendered* awarding the Chambers $1,698.39 for taxes they paid on the 3.94 acres. The award of attorney's fees to Hunt is *reversed*, and the cause is *remanded* to the trial court for reconsideration of the amount of attorney's fees.

**BILL BASS**
Justice

Opinion delivered August 25, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Bass, Retired Justice, Twelfth Court of Appeals, sitting by assignment.*

(PUBLISH)