

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00023-CV

_____

GLYN WEAVER, Appellant

V.

H.E. LACEY, INC., Appellee

On Appeal from the 159th District Court
Angelina County, Texas
Trial Court No. CV-00705-16-10

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Chief Justice Morriss

# OPINION

The question presented in this case is whether a tenant may exercise what his or her lease calls a "first option of refusal" to purchase the leased real estate for a stated purchase price after the lease agreement has expired. The answer to this question depends on whether the right granted by the language of the lease agreement is a right of first refusal or an option to purchase, two different things. A right of first refusal may survive the expiration of a lease agreement. However, because strict compliance regarding an option to purchase is required, a failure to exercise an option in a timely manner renders it ineffectual.

Because we determine that the language used in the lease agreement at issue here constituted an option to purchase and that the option was not timely exercised, we affirm the trial court's judgment declaring that a holdover tenant had no right to possess and no interest in the leased property.

*(1)     Factual and Procedural Background*

Glyn Weaver, as tenant, and H.E. Lacey, Inc., as landlord, entered into a lease agreement dated February 26, 1998, for the lease of property located at 103 Knollwood, Lufkin, Texas, in Angelina County.[1] The "one year . . . Lease" contained the provision in dispute here.

Weaver successfully used the property for his car washing business and decided to remain there. On December 7, 1998, Lacey and Weaver entered into an earnest money contract for the

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Twelfth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

sale of the property. Because Weaver was unable to tender the full $175,000.00, Lacey agreed to finance the transaction at eight percent interest per annum, provided that Weaver pay $17,500.00 at closing. The earnest money contract contemplated a March 31, 1999, closing.

Although Lacy informed Weaver that the property, a former Texaco gas station, contained underground gas storage tanks and required repairs to the roof, Weaver agreed to purchase the property "as-is."[2] Specifically, the earnest money contract stated, "Buyer accepts the Property in its present 'as-is' condition. Buyer shall pay for any repairs required by a lender." On February 16, 1999, Weaver's attorney wrote to Lacey informing it that Weaver was ready to close on the property, but that "an environmental investigator with [TNRCC] contacted Mr. Weaver about some environmental problems on the land" and asked whether Lacey would be willing to take care of those issues.

The summary judgment evidence showed that Lacey made attempts to resolve the environmental issues raised by the TNRCC. On April 5, 1999, Lacey and Weaver entered into agreements to extend the closing first to May 31, 1999, and then to September 30, 1999. Ultimately, Weaver and Lacy entered into a new earnest money contract, containing the same disclosures and "as-is" provisions as the prior contract, and specifying December 15, 2000, as the date of closing. However, that closing was cancelled.[3] According to Weaver, the closing did not occur because he did not agree to the ten percent interest rate provided for in the new earnest

---

[2]The gas storage tanks were permanently removed from service in 1997 and soil samples were sent to the Texas Natural Resource Conservation Commission (TNRCC).

[3]On May 28, 2000, Weaver wrote to Lacey demanding that a general warranty deed and title policy be provided to him prior to closing.

money contract. On December 14, 2001, the TNRCC informed Lacey that it was unable to concur with Lacey's consultant's opinion that the site was "not a leaking storage tank site."

The TNRCC sent a clearance letter on July 15, 2002, demonstrating that the environmental concerns it had previously raised had been alleviated. Weaver attempted to purchase the property again. For a third time, the sale was cancelled. Evidence in the court's file demonstrated that Weaver was unable to make timely rent payments and, according to Lacey, Weaver could not secure either the down payment or a loan for the full amount of the purchase price. According to Weaver, the environmental issues allegedly prevented Lacey from delivering clear title. Even though a clearance letter was issued by the TNRCC, and Weaver had agreed to purchase the property as-is, on September 18, 2002, Weaver notified Lacey of improvements he wished to have made on the property.

It is undisputed that Weaver never tendered the $17,500.00 and that the transaction never closed. No further negotiations for the sale of the property occurred between the parties. Although the parties never entered into another lease agreement, Lacey allowed Weaver to remain on the property as a holdover tenant in exchange for $600.00 in monthly rent. Weaver made no further mention of purchasing the property for over thirteen years.

In 2016, Nirmal Singh offered to purchase the property from Lacey for $225,000.00. On March 1, 2016, Lacey informed Weaver of the offer and further stated,

> Although you do not have an option to purchase this property, as an offer of "Goodwill" we have decided to allow you the opportunity of "First Refusal" to purchase said property for the price of $225,000.
> This purchase would have to be paid in cash and would have to be paid within seven (7) business days from the date of this letter.

4

Weaver refused to pay the $225,000.00 purchase price. Instead, on March 7, Lacey received a letter from Weaver's counsel, which (1) claimed that Weaver had exercised the first option of refusal in the lease agreement and (2) argued that Lacey had failed to abide by the terms of the earnest money contract because it was allegedly unable to turn over title as a result of the TNRCC issues. On March 15, 2016, Lacey's attorney sent a notice terminating Weaver's tenancy.

Eventually, Lacey brought an action for declaratory judgment against Weaver and, alternatively, a claim for trespass to try title. Lacey also asserted the affirmative defense of limitations in response to Weaver's counterclaims for (1) a declaratory judgment specifying his rights under the lease agreement, (2) specific performance of the "first option of refusal," and (3) unjust enrichment as a result of Lacey's collection of rent money after its failure to "consummate the Purchase Option of the Lease Agreement." According to Weaver, the parties had agreed to extend the first option of refusal under the lease agreement.

After ample time for discovery, Lacey filed both a traditional motion for summary judgment on its claims and a no-evidence motion for summary judgment on Weaver's claims. Lacey argued that Weaver never tendered the $175,000.00 as required by the lease agreement to exercise the first option of refusal. Lacey further argued that, even after Lacey agreed to finance the transaction, a closing as contemplated by the earnest money contracts never occurred because Weaver did not make the down payment required and refused to accept the property in an as-is condition.

In response to Lacey's motions for summary judgment, Weaver argued that (1) he exercised the first option of refusal under the terms of the lease agreement, (2) Lacey ratified the

5

continuation of the first option of refusal in the lease agreement, and (3) the terms of the lease agreement, including the first option of refusal, extended to his holdover tenancy.

After reviewing the summary judgment evidence, the trial court found that Weaver was a holdover tenant, that "a holding over under a lease without renewing it <u>does</u> <u>not</u> extend a purchase option beyond the lease term unless a contrary intent appears from the lease as a whole," and that the first option of refusal provided for in the Lease Agreement had expired. It granted Lacey's no-evidence and traditional motion for summary judgment, declaring that Weaver was not entitled to possess, and had no interest in, the property.[4] Weaver appeals.

*(2)     Standard of Review*

Summary judgments are reviewed de novo. *First United Pentecostal Church of Beaumont, d/b/a/ the Anchor of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017) (citing *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015)). In doing that, all evidence opposing the summary judgment is taken as true, and every reasonable inference is taken, and any doubts resolved, against the summary judgment. *Id.* (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)).

---

[4]In its original petition, Lacey labeled the right contained in the lease agreement as a "right of first refusal," a label which the trial court shared in entering its final judgment. On appeal, Weaver argues that Lacey is estopped from arguing that the lease agreement presented an option to purchase instead of a right of first refusal. However, Lacey's amended petition, and live pleading at the time of the summary judgment, asserted in the alternative that, if Weaver's "rights are construed to be an option to purchase the property, Plaintiff would show that Defendant failed to exercise that right," and its summary judgment motion argued that "any right of first refusal or option to purchase [had] terminated." In any event, because the summary judgment motions presented the crucial question of whether Weaver possessed any right to or interest in the property, the matter is squarely before us.

6

If both traditional and no-evidence summary judgments are before us, we first look at the no-evidence motion. *Id.* (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). If the no-evidence motion supports the judgment, we need not address the appeal regarding the traditional motion. *Id.* (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)). If any claim survives our no-evidence review, we should review it under the standard for traditional summary judgments. *Id.* at 219–20.

A no-evidence motion for summary judgment is defeated by evidence that raises a genuine issue of material fact as to the challenged elements. *Id.* at 220 (citing *Ridgway*, 135 S.W.3d at 600). A fact issue exists if the evidence is such that reasonable and fair-minded people could reach different conclusions on that issue. *Id.* (citing *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). If the evidence creates only a mere surmise or suspicion that a particular fact exists, a fact issue has not been created. *Id.* (citing *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)).

One seeking a traditional summary judgment has the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Id.* (citing TEX. R. CIV. P. 166a(c)).

*(3)     Analysis*

Weaver's appeal is premised on his mistaken belief that the lease agreement gave him a preemptive right of first refusal. "'Right of first refusal' and 'option' have distinct meanings." *Jarvis v. Peltier*, 400 S.W.3d 644, 649 (Tex. App.—Tyler 2013, pet. denied). "A right of first refusal or preemptive right to purchase requires the owner of the subject property to offer the

7

property first to the holder of the right on the same terms and conditions offered by or to a bona fide purchaser." *Id.* (citing *Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 644 (Tex. 1996); *City of Brownsville v. Golden Spread Elec. Co-op., Inc.*, 192 S.W.3d 876, 880 (Tex. App.—Dallas 2006, pet. denied)). "An option, on the other hand, is a privilege or right that the owner of the property gives another to buy certain property at a fixed price within a certain time." *Id.* at 650 (citing *Casa El Sol-Acapulco, S.A. v. Fontenot*, 919 S.W.2d 709, 717 n.9 (Tex. App.—Houston [14th Dist.] 1996, writ dism'd)). A party with a right of first refusal cannot compel a sale, but a purchase optionee may, before the option expires, compel the owner to sell under the terms set out in the option. *Id.* (citing *Hicks v. Castille*, 313 S.W.3d 874, 881 (Tex. App.—Amarillo 2010, pet. denied); *Fontenot*, 919 S.W.2d at 717 n.9)).

The lease agreement contained an end date of February 28, 1999, and stated, "During the one-year lease, MR. WEAVER will have first option of refusal for ONE HUNDRED SEVENTY FIVE THOUSAND DOLLARS ($175,000.00)."[5] The lease gave Weaver a right to purchase the property at a specified price and specified an expiration date for the exercise of that right; thus, it was an option to purchase the property, not a right of first refusal. *See Jarvis*, 400 S.W.3d at 650 (citing *Fontenot*, 919 S.W.2d at 717 n.9; *Riley v. Campeau Homes (Tex.), Inc.*, 808 S.W.2d 184, 188 (Tex. App.—Houston [14th Dist.] 1991, writ dism'd)).

---

[5]"We apply well-established rules of contract interpretation when construing the Lease Agreement." *Luccia v. Ross*, 274 S.W.3d 140, 146 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing *Huntley v. Enon Ltd. P'ship*, 197 S.W.3d 844, 849 (Tex. App.—Fort Worth 2006, no pet.)). "Specifically, when construing a written contract, our primary concern is to ascertain the true intent of the parties as expressed in the instrument." *Id.* "If the written instrument is so worded that it can be given a definite or certain legal meaning, then the contract may be construed as a matter of law." *Id.*

The law requires strict compliance with the terms of an option contract. *Besteman v. Pitcock*, 272 S.W.3d 777, 784 (Tex. App.—Texarkana 2008, no pet.); *see Chambers v. Hunt Petroleum Corp.*, 320 S.W.3d 578, 583 (Tex. App.—Tyler 2010, no pet.). "Exercise of an option must be unqualified and strictly in accordance with the terms of the agreement, unless equity requires otherwise." *Chambers*, 320 S.W.3d at 583. Here, the lease agreement provided Weaver with an option to purchase the property for $175,000.00.

On appeal, Lacey concedes, "Weaver exercised the option by tend[er]ing the earnest money contract and paying earnest money." Once a tenant exercises an option to purchase contained in a lease, that act creates a binding bilateral contract to sell and terminates the landlord-tenant relationship. *Rus-Ann Dev., Inc. v. ECGC, Inc.*, 222 S.W.3d 921, 926 (Tex. App.—Tyler 2007, no pet.) (citing *Pitman v. Sanditen*, 626 S.W.2d 496, 498 (Tex. 1981)). Then, the optionee, as the prospective buyer, must fulfill the terms of the purchase contract to complete the transaction. *Faucette v. Chantos*, 322 S.W.3d 901, 911 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Here, Weaver never tendered the sale price under the lease or the down payment of $17,500.00 as contemplated by the earnest money contracts, and no closing occurred.[6]

Weaver argues that the terms of the lease, including the option to purchase, survived after 2002, with him as a holdover tenant. Accordingly, Weaver believed he was entitled to exercise the option to purchase at any time. We disagree.

---

[6]Even without any stipulation that time is of the essence in an option contract, such a provision is implied. *Thermo Prod. Co. v. Chilton Indep. Sch. Dist.*, 647 S.W.2d 726, 734 (Tex. App.—Waco 1983, writ ref'd n.r.e.); *Wilbanks v. Selby*, 227 S.W. 371 (Tex. Civ. App.—Amarillo 1921, no writ); *see Johnson v. Portwood*, 34 S.W. 596 (Tex. 1896).

9

A tenant at will remains in possession of the premises with the landlord's consent, but there is no fixed term, and the landlord can terminate the possession when his or her will changes. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 915 (Tex. 2013); *Tri-Cty. Elec. Coop., Inc. v. GTE Sw. Inc.*, 490 S.W.3d 530, 547 (Tex. App.—Fort Worth 2016, no pet.). Holding over in a formerly rented premises, without renewing the lease, does not keep in place a purchase option that existed during the lease term, unless the lease provides to the contrary. *Blaschke v. Wiede*, 649 S.W.2d 749, 750 (Tex. App.—Texarkana 1983, writ ref'd n.r.e.); *see Thermo Prod. Co.*, 647 S.W.2d at 734 (citing *Kruegel v. Berry*, 9 S.W. 863, 865 (Tex. 1888)). Here, the lease reveals no apparent intent to extend the purchase option beyond the lease term.[7]

The summary judgment evidence established, as a matter of law, that the lease agreement contained an option to purchase the property, not a right of first refusal. It also established that Weaver did not comply with the terms of the option to purchase contained in the lease agreement and that there was never any closing on the earnest money contracts. Therefore, we find that the trial court correctly determined that Weaver produced no evidence demonstrating that he had any rights to, or interest in, the property or that he was entitled to specific performance of any option to purchase.[8] We further find that Lacey established its entitlement to the declaratory relief it requested as a matter of law.

---

[7]Weaver also argues that Lacey "ratified the continuation of the preemptive right of first refusal" by, among other things, offering Weaver a right of first refusal after it received notice of Singh's offer. We have already determined that the lease agreement did not contain a right of first refusal. However, out of "Goodwill," Lacey offered to sell the property to Weaver for $225,000.00. We find that this constituted a separate offer of sale, which Weaver rejected.

[8]Weaver makes no argument with respect to his unjust enrichment claim, which is resolved by our conclusion that the lease agreement contained only an option to purchase the property.

10

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     September 4, 2018
Date Decided:       September 26, 2018